A98A1664. SENSKE v. HARRIS TRUST & SAVINGS BANK.
A98A1665. ROZEBOOM v. HARRIS TRUST & SAVINGS BANK.
(504 SE2d 272)

ELDRIDGE, Judge.

Appellants/defendants Bruce H. Senske and Loren C. Rozeboom appeal the trial court's order finding appellants personally liable as guarantors on a promissory note to secure debt and granting summary judgment to appellee/plaintiff Harris Trust & Savings Bank in its action against appellants to recover the deficiency remaining after the sale of the property which secured the debt.

As determined by the trial court and supported by the record, appellants and Glenn W. Boyce were general partners of Alliance Partners ("Alliance"), a Georgia general partnership. On December 5, 1989, Allstate Life Insurance Company loaned Alliance $2,535,000 in order to purchase a commercial office building located at 2900 Jones Mill Road, Norcross, Gwinnett County ("property").[1] In exchange for the loan, Alliance signed a Promissory Note ("Note") and delivered a security deed on the property which contained an acceleration clause and a power of sale which authorized the lender to foreclose and sell the property in the event of a default. In addition, paragraph 17 of the Note contained a nonrecourse clause wherein liability was to be limited and satisfied from the property.

However, also in exchange for the loan, the three Alliance partners, appellants and Boyce, executed and delivered to Allstate Life Insurance Company a personal Guaranty Agreement ("Guaranty")

---

[1] The security for the loan included "certain real property, the improvements thereon and certain personal property . . . ('Subject Property')."

for the loan amount. Thereunder, each unconditionally guaranteed the full and prompt payment of all principal and interest due and owing on the Note when it matured, "[n]otwithstanding the provisions of paragraph 17 [the nonrecourse clause] of the Note." In addition, the Guaranty specified that "[t]he obligations of the Guarantor hereunder are direct and immediate and not conditional upon pursuit by Lender [Allstate] of any remedies Lender may have against Borrower [Alliance]" or "any security for the Liabilities," i.e., the property which secured the Note. The Guaranty was executed on the same day as the Note, December 5, 1989.

Approximately four years later, Boyce withdrew as a partner of Alliance. Allstate consented to excuse Boyce from his obligations under the Guaranty, but required appellants, as the remaining Alliance partners, to re-affirm their personal guaranty of the loan amount. Consequently, appellants signed an Amended Guaranty Agreement ("Amended Guaranty") re-affirming their financial obligations to Allstate. The Amended Guaranty tracked precisely the language of the initial Guaranty, with the addition of a single paragraph, which stated:

"This amended guaranty agreement serves to modify the initial guaranty agreement entered into between the parties hereto and Glenn W. Boyce on or about December 5, 1989. All parties to this agreement acknowledge that Glenn W. Boyce is no longer a guarantor in favor of the Lender under said previous agreement. Further, the parties to this agreement further acknowledge that Glenn W. Boyce is no longer a member or partner of Borrower. *The remaining terms of said previous agreement shall remain in full effect.*" (Emphasis supplied.) The Amended Guaranty was dated April 1, 1993.

On October 25, 1993, Allstate assigned the loan to Harris Trust & Savings Bank ("Harris Trust"), which assignment included the initial Guaranty and the Amended Guaranty. Alliance defaulted on the Note in February 1994. Harris Trust made demand for payment upon Alliance in a letter dated April 4, 1994. The letter also contained notice of Harris Trust's intent to accelerate the debt and exercise its power of sale at public auction, if payment was not received within ten days from receipt of the letter.

Alliance failed to pay. Appellants, as guarantors, also failed to pay the amounts due and owing under the Note. Harris Trust foreclosed on the property and sold it at public auction on May 3, 1994. The Superior Court of Gwinnett County confirmed the sale. The confirmation was subsequently affirmed by the Supreme Court of Georgia. *Alliance Partners v. Harris Trust & Sav. Bank*, 266 Ga. 514 (467 SE2d 531) (1996). Based upon the Guaranties, Harris Trust filed suit against appellants for the deficiency between the loan amount and sale price of the property, including interest and penalties.

On motion for summary judgment, the trial court found as a matter of fact that as of May 3, 1994, the amount owed on the Note, including penalties and interest (except attorney fees) was $2,805,195.42. The property sold at foreclosure for $2,017,000, leaving a deficiency of $788,195.42. The interest on the deficiency accrued at the daily rate of $320.20. As of February 17, 1998, accrued prejudgment interest totaled $443,797.20 (1,386 days x $320.20). The entire amount of the deficiency and prejudgment interest as of February 17, 1998, was $1,231,992.60. In addition, the trial court found that Harris Trust made out a prima facie right to judgment and that appellants failed to establish any affirmative defense thereto. The trial court awarded the above amount reflecting the deficiency and interest, and the court also awarded attorney fees pursuant to OCGA § 13-1-11 in the amount of $123,224.26. *Held*:

"It is ordinarily the duty of the court to interpret a contract as a matter of law and, where necessary, to construe it by applying the rules of construction set forth in OCGA § 13-2-2. The cardinal rule for construing a contract is to ascertain the intent of the parties. Where the language of an instrument may fairly be understood in more than one way, it should be interpreted to reflect the sense in which the parties understood it at the time of execution, and extrinsic evidence is admissible to establish what that original understanding was. That meaning is to be preferred which will give effect to the contract as a whole.

"If, after application of the rules of construction, there remains an ambiguity, then it becomes the duty of the jury, as finder of fact, to construe the instrument so as to resolve that ambiguity. It is the court who decides whether or not, after application of the rules of construction, an ambiguity exists." (Citations omitted.) *Gans v. Ga. Fed. Sav. & Loan Assn.*, 179 Ga. App. 660, 662-663 (1) (347 SE2d 615) (1986).

Here, there is no ambiguity, and the trial court correctly found the intent of the parties was manifest in the language of the loan documents, including the initial Guaranty and the Amended Guaranty. Obviously, appellants wanted the loan from Allstate and were willing to personally guarantee its payment in order to get it. Later, when their partner Boyce wanted out of the Alliance partnership, appellants necessarily re-affirmed their personal financial commitment to the loan as the remaining partners of Alliance. Clearly, the entire purpose of the Amended Guaranty was the removal of Boyce, and in that regard, the *"remaining terms* of said previous agreement [Guaranty] shall remain in full effect." (Emphasis supplied.)

However, without ever addressing the clear intent of the parties when executing both Guaranties, appellants seek to avoid the contract.

1. First, appellants contend that there is a "fatal variance" in the Amended Guaranty which precludes its enforcement, because the Amended Guaranty includes the initial Guaranty's reference to the Note as "a mortgage note of even date herewith."[2] However, appellants argue, the Amended Guaranty is dated April 1, 1993, and the Note is dated December 5, 1989. Accordingly, appellants contend that the Amended Guaranty's incorrect reference to a mortgage note dated April 1, 1993, failed to obligate them to pay the December 5, 1989 Note that is the subject of this action.

We reject this argument. The extension of appellants' argument is that they made a personal guaranty for the payment of a non-existent debt, and that, obviously, is not the case. We refuse to focus on the "even date herewith" language at the expense of the contract as a whole. "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). Herein, both the initial and the Amended Guaranty reveal the intent of appellants to personally commit to the payment of the December 5, 1989 Note.

Contrary to appellants' contentions, our decision in *Avec Corp. v. Schmidt*, 207 Ga. App. 374 (427 SE2d 850) (1993), is not applicable herein. In that case, there was nothing within the four corners of the disputed guaranty which *otherwise* demonstrated the intent of the parties as to the lease agreement being referenced in the guaranty by the language "the lease between them dated hereof," since the only lease involved was executed on a different date from the guaranty. Id. at 375-376. However, here the Amended Guaranty specifically states that the Note at issue is the December 5, 1989 Note, despite the "even date herewith" language. In fact, the Amended Guaranty declares that, after the removal of Boyce as an obligor, the remaining terms of the initial Guaranty regarding the December 5, 1989 Note are to remain in full effect. Thus, there is nothing "implied" about the extent of appellants' liability under the Amended Guaranty.

2. Equally meritless is appellants' contention that Harris Trust's remedy was limited to either foreclosure on the property *or* suit on the personal Guaranty, not both, and that once the property was foreclosed, the appellants' personal Guaranty was satisfied.

In this case, the lender already had a security interest in the property with a power of sale when appellants' personal Guaranty was executed. The whole purpose of the personal Guaranty was to cover a potential deficiency in satisfying the entire loan amount through foreclosure on the property — not an unreasonable provision

---

[2] The Note and the initial Guaranty were both executed on December 5, 1989.

in light of events. In that regard, the Guaranty and Amended Guaranty provide that "[t]he obligations of the Guarantor hereunder are direct and immediate and not conditional upon pursuit by Lender of any remedies Lender may have against Borrower [Alliance]. A separate action or actions for payment, damages or performance may be brought and prosecuted against Guarantor whether or not an action is brought against Borrower or any security for the Liabilities." Thus, there is no limitation on Harris Trust's pursuit of remedies in order to recover the full loan amount.

Accordingly, notwithstanding the nonrecourse provision in the security deed, by executing the Guaranty and Amended Guaranty appellants evidenced the intention to bind themselves personally on the Note in the same fashion that the security deed bound the Alliance partnership on the Note. Such *additional* collateral was required in order for appellants to secure the loan, and at that time, the appellants willingly undertook that personal obligation in exchange for what they wanted. And the fulfillment of the obligations of Alliance under the Note through foreclosure on the property in no way eliminates the need for appellants to fulfill their obligations under the Guaranty and the Amended Guaranty for the remaining deficiency.

3. Next, appellants contend that the amount of debt was not established so as to warrant the trial court's award of damages on summary judgment. We disagree. The trial court relied upon competent evidence regarding the amount of debt. The record contains the sworn testimony of the Loan Servicing Manager at Allstate, wherein the loan originated, who made detailed calculations as to the amount owed by appellants, including the interest and penalties, offset by the amount recovered by the sale of the property at public auction;[3] these figures were based upon the rates contained in the loan documents which were already made a part of the record. Compare *Watson v. Dept. of Ed. Credit Union*, 201 Ga. App. 761 (412 SE2d 286) (1991); *Jernigan Auto Parts v. Commercial State Bank*, 186 Ga. App. 267, 270 (1) (367 SE2d 250) (1988). Further, appellants did not dispute these calculations or object to the documents upon which the calculations were based. Nor did appellants offer any evidence to contradict the Loan Servicing Manager's figures.

"In this case, the movant bank introduced affidavits of persons competent to establish the underlying facts of the bank's claim. The appellants were duly served. The bank carried its initial burden of showing the absence of any material issue of fact. The appellants did

---

[3] Appellants' pleadings reflect that the foreclosure sale price of the property was $2,017,000.

not present refuting evidence. Thus, the grant of summary judgment was proper. The appellants cannot rely upon the mere denial in their pleadings. They had a duty to respond to the bank's motion as supported by evidence in such a manner as to show a genuine issue of fact. The bank's evidence established its right to its claim. That right was not refuted. It follows that the trial judge did not err in granting the bank's motion for summary judgment for any of the reasons alleged." (Citations omitted.) *Ga. Grain &c. Co. v. First Ga. Bank*, 142 Ga. App. 709, 710-711 (3) (236 SE2d 913) (1977); see also *Pollard v. First Nat. Bank of Albany*, 169 Ga. App. 598 (1) (313 SE2d 785) (1984).

4. Finally, appellants contend the loan was secured by both real and *personal* property, and that Harris Trust did not liquidate appellants' personal property in a "commercially reasonable manner" under the Uniform Commercial Code, OCGA § 11-9-504. Thus, appellants contend that Harris Trust should not be permitted to pursue the instant deficiency action. This contention is wholly without merit. While the loan may have been secured by real and personal property, "[i]f the security agreement covers both real and personal property, the secured party may proceed under this part [UCC] as to the personal property *or* he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property *in which case the provisions of this part [UCC] do not apply*." (Emphasis supplied.) OCGA § 11-9-501 (4). Harris Trust chose to exercise its "rights and remedies in respect of the real property." Id.; see also OCGA § 44-14-161. Accordingly, the UCC does not apply to deter the instant action. *United States &c. v. Kennedy*, 256 Ga. 345, 347 (2) (348 SE2d 636) (1986).

Moreover, the Supreme Court of Georgia has held that the foreclosure on the property which secured the loan and the confirmation thereof were completely proper. *Alliance Partners v. Harris Trust & Sav. Bank*, supra. We do not go behind that ruling to address appellants' arguments that should have been raised in the earlier action.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JULY 14, 1998.

*Siegel & Golder, Mark L. Golder, Lynn L. Carroll*, for appellant (case no. A98A1664).

*Davidson, Fuller & Sloan, William M. Davidson, Stephen P. Fuller*, for appellant (case no. A98A1665).

*Alston & Bird, Richard R. Hays, Cynthia L. Counts, Sterling G. Culpepper*, for appellee.