A98A0789. GEORGIA FARM BUREAU MUTUAL INSURANCE
COMPANY v. OSTING et al.
A98A0830. MORRISON v. GEORGIA FARM BUREAU MUTUAL
INSURANCE COMPANY.
(510 SE2d 334)

RUFFIN, Judge.

On December 18, 1995, John Edwin Morrison and George W. Osting entered into a written bailor-bailee agreement whereby Osting agreed to store Morrison's auto parts and tools on Osting's property and to be responsible for the loss of any such item if the loss was not caused by Morrison. On February 10, 1996, a fire destroyed Morrison's property, which was being held at Osting's residence. At that time, Osting held a homeowner's insurance policy with Georgia Farm Bureau Mutual Insurance Company. On April 1, 1996, Morrison, pursuant to his agreement with Osting, sued Osting for the property damage caused by the fire. Thereafter, Georgia Farm Bureau initiated this declaratory judgment action, seeking a declaration that it was not required to provide coverage to Osting with regard to his liability under the agreement with Morrison. The parties submitted the issues to the trial court on the pleadings, depositions, and briefs. After considering the record, the trial court held that the homeowner's policy covered Osting for the claims Morrison asserted in his suit. In Case No. A98A0789, Georgia Farm Bureau appeals, asserting that the trial court erred in concluding that the policy provides coverage for liability under the bailor-bailee agreement. In Case No. A98A0830, Morrison appeals a separate finding by the trial court that coverage was not afforded pursuant to a particular policy provision. Because the trial court failed to consider evidence of the parties' intent as to the meaning of the bailor-bailee agreement, we reverse the trial court's ruling and remand for further consideration.

## Case No. A98A0789

1. In its two enumerations of error, Georgia Farm Bureau contends that the trial court erred in holding that Osting's homeowner's policy provides coverage for liability Osting assumed under the bailor-bailee agreement, and that the trial court improperly considered parol evidence in so holding.

Osting's liability to Morrison, for which he seeks coverage under the homeowner's policy, arises from the bailor-bailee agreement between Osting and Morrison regarding the storage of Morrison's goods. Osting's homeowner's policy expressly excludes from coverage any liability "under any contract or agreement." However, this exclusion does not apply to written contracts "that directly relate to the ownership, maintenance or use of an insured location." Thus, the

relevant question becomes whether the bailor-bailee agreement between Osting and Morrison, "directly relates" to the ownership, maintenance, or use of Osting's residence.

The bailor-bailee agreement does not specifically refer to Osting's residence, but states that "OSTING shall store for MORRISON his auto parts, motors, tools, and automotive related accessories *on the property of OSTING.*" (Emphasis supplied.) On its face, it is not clear whether the phrase "the property of OSTING" refers specifically to Osting's residence, which is the insured property under the homeowner's policy. Because the agreement is ambiguous in this respect, the trial court was required to consider parol evidence to determine the intent of the parties. See *Kellos v. Parker-Sharpe, Inc.*, 245 Ga. 130, 132 (1) (263 SE2d 138) (1980). "It is axiomatic that a contract should be construed by the court where the language is undisputed but the meaning of that language is in dispute. OCGA § 13-2-1. It is the responsibility of the court to determine whether an ambiguity exists. If the contract does not require disentanglement of the language by a jury, i.e., the words used are plain and clear in their common usage, it remains the duty of the trial court to look to the language of the contract with a view to effectuating the intent of the parties." (Citations and punctuation omitted.) *Candler v. Davis & Upchurch*, 204 Ga. App. 167, 168 (2) (419 SE2d 69) (1992).

In holding that the bailor-bailee agreement directly related to Osting's residence, the trial court based its decision solely on the fact that, at the time Osting entered into the agreement, he owned no property other than his residence. Based on this fact alone, the court held that "the [bailor-bailee agreement] necessarily 'directly related' to the 'insured location.'" The court thus summarily rejected Georgia Farm Bureau's argument that, pursuant to the agreement, Osting could have stored Morrison's property at locations *other* than his residence and still been in compliance with the bailor-bailee agreement.

Clearly, the fact that Osting owned no property other than his residence supports a finding that Osting planned to store Morrison's goods at Osting's residence. However, in determining whether the homeowner's policy provides coverage, the relevant question is not whether Osting planned to use the insured premises to store the goods, but whether the *bailor-bailee agreement* itself "directly relates" to the insured premises. If the agreement allows Osting to store the goods at his residence, but also allows him to store the goods at other locations (e.g., at a rented storage shed), then it cannot be said that the agreement itself "directly relates" to the use of the insured premises. Rather, the agreement would relate to the storage of goods, and not to the use of property. The trial court thus erred in focusing on how the parties intended to carry out the terms of the contract, rather than focusing on what the parties intended the

contract to require.

"The cardinal rule for construing a contract is to ascertain the intent of the parties." (Punctuation omitted.) *Senske v. Harris Trust & Savings Bank*, 233 Ga. App. 407, 409 (504 SE2d 272) (1998). In his deposition, Osting was questioned at length regarding the intent of the agreement, and testified that the agreement did not require him to store Morrison's goods at his residence. He testified that he could have acquired another storage area separate from his residence and still been in compliance with the bailor-bailee agreement. Moreover, Osting testified that he would be in compliance with the agreement no matter where he stored Morrison's property, "[j]ust as long as it was safe." Osting agreed that the agreement "did not relate particularly to where the stuff was. It just happened to be there at the time of the fire." In his deposition, Morrison also testified that the agreement did not specifically require that the goods be stored at Osting's residence, although he stated that the parties understood the goods would be stored "on property then existing and owned by Mr. Osting."

Thus, there is at least a conflict in the evidence as to whether the agreement requires that the goods be stored at Osting's residence. In its ruling, the trial court failed to resolve this conflict, and focused instead on where the parties planned to store Morrison's goods. The trial court thus failed to consider the effect of evidence regarding the parties' intent as to the meaning of the contract. Accordingly, the trial court's ruling must be reversed and this case remanded for further action consistent with this opinion.

## Case No. A98A0830

2. Morrison, in his cross-appeal, asserts that the trial court erred in holding that Osting's homeowner's policy did not provide liability coverage under an additional exception to the exclusion for liability under contracts or agreements. We disagree.

As stated above, Osting's homeowner's policy excludes from coverage any liability Osting assumes under a contract or agreement. However, this exclusion does not apply to written contracts "where the liability of others is assumed by the insured prior to an occurrence." We agree with the trial court's conclusion that this language is inapplicable to this case. Under the clear language of the bailor-bailee agreement, Osting created his own liability for damage to Morrison's personal property; he did not assume the liability of others. In fact, the liability of others is not mentioned anywhere in the agreement. Specifically, the agreement provides that "OSTING will be fully responsible for the safety and well being of property belonging to MORRISON while on the property of OSTING, and shall be liable for any loss to the property of MORRISON not caused by MORRI-

SON." As long as Morrison himself does not damage his property, the responsibility for any damage lies with Osting. Accordingly, the trial court correctly held that the homeowner's policy provides no liability coverage under this provision.

*Judgment affirmed in Case No. A98A0830. Andrews, C. J., McMurray, P. J., Pope, P. J., Beasley and Eldridge, JJ., concur. Blackburn, J., not participating. Judgment reversed and case remanded in Case No. A98A0789. Andrews, C. J., McMurray, P. J., and Eldridge, J., concur. Pope, P. J., and Beasley, J., dissent. Blackburn, J., not participating.*

BEASLEY, Judge, concurring in Case No. A98A0830 and dissenting in Case No. A98A0789.

I concur in Division 2 but respectfully dissent as to Division 1.

The trial court's judgment in this declaratory judgment action, which it tried upon the record by agreement of the parties, must be affirmed. It comes to us not after an order on summary judgment motions, which were denied, but after a fact-finding trial.

The court focused on the four corners of bailee Osting's insurance policy and the four corners of the bailor-bailee agreement. It took into account the undisputed fact that at the times of the agreement (December 18, 1995) and of the fire loss (February 10, 1996), the only real property owned by the bailee was his insured residence premises where the bailed personal property was stored.

Georgia Farm Bureau Mutual's policy provided personal liability to the Ostings excluding liability "under any contract or agreement." But it further stated: "However, this exclusion does not apply to written contracts: (a) that directly relate to the ownership, maintenance or use of an insured location." The "premises covered" were expressly identified as in fact the premises where the storage and fire occurred and certain other premises which might thereafter be acquired or used or rented by the insured.

By the written bailment contract, Osting agreed to "store" certain auto items "on the property of OSTING (hereinafter referred to as 'STORAGE')" and more specifically, that "OSTING shall provide private garage areas for STORAGE of his own choosing" on his property so long as it was "indoors or under shelter, readily accessible, clean enough for the intended use, and will be undisturbed. . . ." A structure housing three connecting buildings behind the Osting residence was used for the storage.

Contracts, which both documents are, must be construed in accordance with their intendment. Their construction was for the court, because it is a matter of law. OCGA § 13-2-1. Their plain language established that the storage of bailor Morrison's property was to be in private garage areas on bailee Osting's property. The trial

court's judgment is in accordance with the relevant principles of law recited in *Candler v. Davis & Upchurch*, 204 Ga. App. 167, 168-169 (2) (419 SE2d 69) (1992).

To the extent there was any dispute of fact, which appears absent insofar as material facts are concerned, the judge in this case was the factfinder. OCGA § 13-2-1. Its findings are not to be set aside unless clearly erroneous. *Price v. Age, Ltd.*, 194 Ga. App. 141, 142 (1) (390 SE2d 242) (1990). Evidence that the insured premises were the location intended for the storage, and where the storage actually took place without further discussion, question or change, did not "contradict or vary the terms" of the valid written bailment contract. Such would be prohibited by the parol evidence rule, OCGA § 24-6-1. But "surrounding circumstances are always proper subjects of proof to aid in the construction of contracts." OCGA § 24-6-4. The same rule applies to the fact that "the property of OSTING" referred to in the bailment agreement meant the same premises which were covered by the policy; it was not fatal that the agreement did not recite the address.

Not relevant is conjecture about what might have happened if Osting had ever acquired other property not covered by the policy and moved the bailed items there. In fact, Morrison testified: "I don't think it was ever contemplated in the contract that the property would ever be placed anywhere else." The case was properly decided on what actually transpired.

I am authorized to state that Presiding Judge Pope joins in this dissent.

DECIDED DECEMBER 4, 1998.

*John T. Croley, Jr.*, for Georgia Farm Bureau.
*Jason A. Craig*, for Osting.
*John E. Morrison*, pro se.