A06A1792. WALTER R. THOMAS ASSOCIATES, INC. v. MEDIA DYNAMITE, INC.

(643 SE2d 883)

PHIPPS, Judge.

Media Dynamite, Inc. sued Walter R. Thomas Associates, Inc. (WRT), seeking payment for services performed under the parties' oral contract. The trial court granted summary judgment to Media Dynamite, and WRT appeals. For reasons that follow, we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] We review a grant of summary judgment de novo and view the

---

[12] *Bozeman v. CACV of Colorado, LLC*, 282 Ga. App. 256, 257 (638 SE2d 387) (2006).
[1] OCGA § 9-11-56 (c).

evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

In support of its motion for summary judgment, Media Dynamite presented the affidavit of its president, Michael Krasney, who stated the following. Media Dynamite was in the business of "purchasing advertising time on behalf of its clients in exchange for commission." WRT was one such client and agreed to pay directly to Media Dynamite the amounts charged by the media providers, plus a commission, calculated as 15 percent of the amounts charged by the media providers. In turn, Media Dynamite would pay the media providers their charges, retaining the 15 percent as its compensation from WRT. Krasney testified that, pursuant to this agreement, Media Dynamite had "purchased certain media advertising time on behalf of [WRT]" and, as of the date of the affidavit, WRT owed Media Dynamite the principal amount of $30,266.75.

To support his calculation, Krasney attached to his affidavit what he claimed were business records of Media Dynamite. He testified that documents contained in Exhibit B to his affidavit showed an indebtedness of $24,578. Included therein were invoices generated by PAX TV, TBS Superstation, and WGCL TV. As to each such invoice, Krasney testified that WRT had refused to pay both the amount due to the media provider and the 15 percent commission. In addition, Krasney attached to his affidavit an Exhibit C, which he claimed showed an indebtedness of $5,688.75. Included therein were invoices generated by Cable Advertising of Metro Atlanta, Comcast Spotlight, TBS Superstation, and WXIA TV. As to these invoices, Krasney testified that WRT had paid the media providers their charges, but refused to pay Media Dynamite its 15 percent commission.

Opposing the summary judgment motion, WRT argued that Krasney's calculation of compensatory damages was insufficiently supported. It challenged documents attached to Krasney's affidavit, asserted that it had paid directly to the media providers amounts due them, and claimed that Media Dynamite had not performed its obligations under their contract and thus had not earned the amount sought as commissions.

In support of its positions, WRT presented the affidavit of an officer and shareholder, Walter R. Thomas III. According to Thomas,

---

[2] *Brown v. McGriff*, 256 Ga. App. 44 (567 SE2d 374) (2002).

WRT previously had a verbal arrangement with Plaintiff Media Dynamite, Inc. ("MD"), whereby MD agreed to identify dates, times and television stations with which advertisements for WRT should be placed, and to arrange for said placements. WRT agreed to make payment for those advertisements. Unfortunately, MD did not provide the agreed services, leaving it to WRT to itself identify dates, times and television stations with which to place advertisements, and to then instruct MD regarding said placements. Ultimately, WRT terminated its verbal arrangement with MD because MD had failed to perform its obligations. . . . Because WRT became dissatisfied with MD as a consequence of MD's utter failure to perform its obligations, WRT opted to pay the television stations directly for advertising placed with those stations. For example, attached hereto as Exhibit 1 is a cancelled check establishing payment by WRT to WTBS for advertising for which MD seeks payment in its Motion for Summary Judgment.

The trial court summarily granted Media Dynamite's motion, awarding it "the principal amount of $30,266.75, plus pre-judgment interest pursuant to OCGA § 7-4-16 in the amount of $10,858.93 to and through February 20, 2006,[3] plus post-judgment interest at the legal rate and all costs of this action."

1. WRT contends that Media Dynamite failed to establish the amounts charged by the media providers. To establish this amount, Media Dynamite presented Krasney's affidavit and invoices received from the media providers with respect to the advertisements placed on behalf of WRT.

"Affidavits purporting to establish the amount of a debt without accompanying business records, where appropriate, are insufficient."[4] Creating an exception to the hearsay rule, the Business Records Act provides:

Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record

[3] Oral argument was held on this date.
[4] *Casey v. North Decatur Courtyards Condo. Assn.*, 213 Ga. App. 190, 191-192 (2) (444 SE2d 361) (1994).

at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.[5]

However, before such a writing or record is admissible, a foundation must be laid through the testimony of a witness who is familiar with the method of keeping records and who can testify thereto and to facts which show that the entry was made in the regular course of a business at the time of the event or within a reasonable time thereafter.[6]

A trial court's decision to admit evidence as an exception to the hearsay rule will not be disturbed absent an abuse of discretion.[7]

(a) WRT argues that the invoices contained in Exhibits B and C lacked adequate foundations. It asserts that, having been generated by the media providers, the invoices can be considered the business records of those companies only. It also points out that the invoices were unaccompanied by testimony from any representative of the respective networks.

The invoices were prepared by the media providers as part of their agreements with Media Dynamite for the purpose of billing for advertisements placed. Media Dynamite then kept these invoices in its own files as part of its records. As such, these documents may properly be considered the business records of Media Dynamite, and the testimony from Media Dynamite's president was appropriate to lay the foundation for this evidence. Accordingly, WRT's argument in this instance fails.[8]

(b) WRT argues that the account statements included in Exhibits B and C are inadmissible on the ground that they are dated after the commencement of this litigation and thus could not have been made in the regular course of Media Dynamite's business. Media Dynamite counters that the statements are mere summaries, citing the proposition that "a summary of business records is admissible even though the summary itself may not qualify as a 'business record' under OCGA § 24-3-14."[9]

The account statement contained in Exhibit C is a mere summary of the invoices therein. In light of our conclusion in Division 1 (a), it is admissible.[10] The account statement contained in Exhibit B

---

[5] OCGA § 24-3-14 (b); see *Suarez v. Suarez*, 257 Ga. 102, 103 (2) (355 SE2d 649) (1987).

[6] *Suarez*, supra at 103-104.

[7] *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (2) (501 SE2d 30) (1998).

[8] See *Lewis v. United California Bank*, 143 Ga. App. 126, 127 (1) (237 SE2d 645) (1977), aff'd, 240 Ga. 823 (242 SE2d 581) (1978); *Wheat Enterprises*, supra.

[9] *Polma, Inc. v. Coastal Canvas Products Co.*, 199 Ga. App. 616, 617 (3) (405 SE2d 531) (1991).

[10] See id.; see also *Reisman v. Martori, Meyer, Hendricks & Victor*, 155 Ga. App. 551,

summarizes the invoices therein, but also lists a $288 fee charged to WRT, for which no supporting business record was presented. Consequently, that entry is hearsay and cannot be considered in determining the amount owed by WRT.[11]

(c) WRT attacks as hearsay a letter contained in Exhibit B, addressed to Krasney from a representative of WGCL TV, concerning Media Dynamite's delinquent account with that media provider. We agree that this correspondence was hearsay. But WRT has not shown that Krasney's or the court's calculation of the amount charged by the media providers was dependent upon it.[12]

2. WRT contends that genuine issues of material fact exist regarding the amount it owes Media Dynamite for charges by the media providers.[13]

(a) WRT asserts, "Although WRT agrees that [Media Dynamite] placed some advertising with television stations on behalf of WRT, the Record contains no clear evidence that [Media Dynamite] ever actually *paid for* that advertising." But there is no evidence that WRT's obligation to pay Media Dynamite for the advertising arose only after Media Dynamite actually paid for same. Krasney's testimony is uncontroverted that WRT agreed to pay Media Dynamite the amounts charged by the media providers and, in turn, Media Dynamite would pay the media providers those amounts. Thus, this assertion shows no genuine issue of material fact regarding the cited component of indebtedness.

(b) WRT asserts that the canceled check attached to Thomas's affidavit showed that it had paid "Turner Broadcasting directly for certain of the advertising for which [Media Dynamite] seeks payment."

Media Dynamite relied upon Exhibit B to establish the amount WRT owed it for the media providers' charges. That exhibit included two TBS Superstation invoices showing that the media provider was owed $3,442.50 and $4,377.50. Media Dynamite credited WRT with having paid directly to media providers certain of their charges, specifying which such charges by invoices within Exhibit C. Included therewith were invoices from TBS Superstation totaling $9,950.

The canceled check attached to Thomas's affidavit was made out to "Turner Advertising," referenced no particular invoice, and paid

---

553-554 (3) (271 SE2d 685) (1980).

[11] See *White Missionary Baptist Church v. Trustees of First Baptist Church of White*, 268 Ga. 668, 669 (1) (492 SE2d 661) (1997) (hearsay contained in affidavit could not be considered in determining whether grant of summary judgment was correct).

[12] See *Casey*, supra (concerning sufficiency of affidavit to support the amount of a debt).

[13] This contention does not touch upon the commission component of Media Dynamite's claim for damages.

$7,373.75. Thomas's testimony on this point was only that the check concerned "advertising for which [Media Dynamite] seeks payment in its Motion for Summary Judgment." We conclude that the evidence presented by WRT, including Thomas's affidavit and the attached canceled check, failed to show that WRT had paid directly to any media provider any charge for which Media Dynamite seeks payment.

3. WRT contends that the trial court erred by granting Media Dynamite summary judgment because there are genuine issues of material fact regarding whether Media Dynamite was entitled to payment of commissions in connection with the invoices contained within Exhibits B and C.

(a) WRT asserts that its evidence showed a dispute whether it had agreed to pay Media Dynamite any commissions for any services. We disagree. Thomas did not testify that WRT never agreed to compensate Media Dynamite for services described by him in his affidavit; rather, he testified that Media Dynamite did not earn any commission because it had failed to perform the services.

(b) WRT argues that there is an evidentiary conflict as to what work Media Dynamite was required to perform to earn the commissions it seeks relative to Exhibits B and C. We agree.

Thomas and Krasney presented conflicting testimony regarding Media Dynamite's obligations to earn commission. According to Thomas, Media Dynamite was obligated to "identify dates, times and television stations with which advertisements for WRT should be placed, *and* to arrange for said placements."[14] Krasney, however, testified that Media Dynamite was entitled to full commission because it had "purchased certain media advertising time on behalf of [WRT] pursuant to their agreement." Implicit in Krasney's affidavit is that Media Dynamite was under no obligation to identify dates, times, and television stations on WRT's behalf.

> In deciding that [Media Dynamite was entitled to the commission sought], the trial court appears to have found [Krasney's] affidavit more credible than [Thomas's]. However, the trial court cannot in considering summary judgment weigh the evidence or determine its credibility. Instead, where there is a conflict in the evidence as to the existence of an oral contract or *as to its terms*, the matter must be submitted to a jury for resolution.[15]

---

[14] (Emphasis supplied.)
[15] *Dover v. Mathis*, 249 Ga. App. 753, 754 (549 SE2d 541) (2001) (punctuation and footnotes omitted; emphasis supplied).

Because the record shows a conflict in the evidence as to a term of the parties' oral contract, we reverse the grant of summary judgment to Media Dynamite concerning its entitlement to commissions.

(c) We find, however, that Media Dynamite has established by Krasney's testimony and Exhibit B its entitlement to payment from WRT for the amounts charged by the media providers and thus affirm that part of the grant of summary judgment. But as explained in Division 1 (b), Krasney's calculation of indebtedness with respect to Exhibit B included a $288 fee not supported by probative evidence; and the record shows that the trial court's calculation of the award included this unsupported amount.

In light of Divisions 1 (b) and 3 (b), complete summary judgment to Media Dynamite was not authorized. Thus, the entire award is vacated, and we do not reach WRT's contentions regarding prejudgment interest.

4. WRT contends that the trial court erred in granting summary judgment against Thomas in his individual capacity, asserting that Thomas was not made a party to the lawsuit. Media Dynamite takes a similar position, stating in its appellate brief that only "Walter R. Thomas Associates, Inc.[ ] is intended to be, or was, joined as a party Defendant in this action."

Pretermitting whether WRT has standing to assert this contention concerning the liability of another, we interpret the trial court's judgment as being entered only against WRT. Although Media Dynamite styled the underlying case "Media Dynamite, Inc., Plaintiff, v. Walter R. Thomas Associates, Inc. d/b/a Walter Thomas a/k/a Walter Thomas Jewelers, Defendant," Media Dynamite described in its complaint the "defendant" as "a Corporation organized and existing under the laws of the State of Georgia, whose registered agent for service is Walter R. Thomas." Thereafter, service was perfected only on the corporate defendant. Thomas later averred in his affidavit that WRT had never conducted business as "Walter Thomas" and that he had never personally contracted with Media Dynamite. Finally, the trial court granted summary judgment in favor of Media Dynamite and against "the defendant." Under these circumstances, Thomas was not subject to the trial court's judgment.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Ruffin, J., concur.*

DECIDED MARCH 22, 2007.

*Friend, Hudak & Harris, Mari Myer*, for appellant.
*Thomas V. Keough*, for appellee.