A11A1964. PATTERSON v. BENNETT STREET
PROPERTIES, L.P.
(726 SE2d 147)

ADAMS, Judge.

Chip Patterson signed a guaranty for a restaurant lease, and when the tenant failed to pay, Bennett Street Properties, L.P, the landlord, unsuccessfully sought to collect on the guaranty. Bennett Street then brought suit to enforce the guaranty, and after discovery, the trial court granted summary judgment in its favor and denied Patterson's cross-motion for summary judgment. Patterson appeals.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Construing the facts in favor of Patterson for purposes of

---

analyzing the summary judgment granted against him, the record[1] shows the following: Two or three restaurants have been operated on certain premises located on the first floor at 2110 Peachtree Road (near Bennett Street) in Atlanta, Georgia (the "Bennett Street Premises") pursuant to multiple assignments and other amendments of one original 20-year lease dated January 20, 1989 between a predecessor-in-interest of Bennett Street and The Peasant Restaurants, Inc. The 1989 lease allows both amendments and assignments upon consent of the landlord. As of 2007, appellee Bennett Street was the landlord of the premises.

Appellant Patterson founded and is the chief executive officer of a company that manages parking services; the company has about 1,500 employees across the country. On behalf of that business, Patterson has signed at least 100 parking service agreements. Nevertheless, he testified that he does not usually read documents before signing them.

In the 1990s, Patterson met and became friends with Anthony LaRocco, a restaurauteur, while providing parking services to a restaurant run by LaRocco near the Bennett Street Premises. That restaurant ceased operating in about 2006, and, approximately one month before Christmas 2007, LaRocco asked Patterson to lend him $250,000 in connection with opening a new restaurant named Vita at the Bennett Street Premises; Patterson knew that LaRocco was "broke" at the time. The two discussed the plans for the restaurant, including the restaurant concept, the menu, and what the revenue and expense projections were. Part of Patterson's "research, [or] due diligence," was his knowing LaRocco. In addition, LaRocco gave Patterson a one-page proforma about the business, as well as the proposed menu. Patterson testified that he obtained legal advice relative to the documents. During this process, Patterson also received a copy of a lease for the proposed restaurant: He averred, "At some point, I did get the lease, yes." Patterson was asked specifically, "But did you ever have a copy of the Vita — of the lease that Vita was going to enter into?" Patterson responded, "At some point, yes."[2] He testified that he looked at the lease "[to] analyze, I

---

[1] In their appellate briefs, neither party used proper citations to the record as required by Court of Appeals Rule 25 (a) (1) ("Record and transcript citations shall be to the volume or part of the record or transcript and the page numbers that appear on the appellate record or transcript as sent from the trial court."). See also Court of Appeals Rule 25 (c) (2) (iii).

[2] Although Patterson also averred that he looked at "a lease or a lease proposal or some template of a lease" and that he did not know what it was, his testimony that he analyzed a lease for the proposed restaurant in order to understand what the rent expense would be was not withdrawn or further explained. Accordingly, to the extent the vague comments about a "template" are somehow inconsistent with his other testimony, it will be construed against him. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986)

guess, [LaRocco's] expenses, what his rent expense *would be*." (Emphasis supplied.) He also testified that the 1989 lease "might have been" what he saw during his due diligence regarding the transaction. Patterson knew that Vita would be the restaurant that would be operating in the premises identified in the lease and that the tenant would either be LaRocco or Vita. A closing would eventually take place on December 27, 2007, for the assignment of the lease to LaRocco, and Patterson's loan to LaRocco would eventually close on January 4, 2008.

Meanwhile, prior to the closings, LaRocco called Patterson on or the day before December 24, 2007 and told him that Bennett Street would not let him open the restaurant without Patterson signing a guaranty.[3] LaRocco gave Patterson the guaranty document on December 24, and Patterson signed it that day at his home; LaRocco did not present Patterson with any other documents that day; and Patterson did not have any lease in his possession that day. Before signing the guaranty, Patterson averred that he "probably read over it lightly," but he could not recall reading it, and he did not consult an attorney or seek advice from any other professional. He did not discuss the guaranty with anyone from Bennett Street. Obviously, prior to signing the guaranty, Patterson did not see the finalized lease assignment or other documents that were signed and dated at the closing of the lease assignment on December 27, 2007.

Patterson did not attend the December 27, 2007 closing, but the signed guaranty was presented to Bennett Street with all five pages and Patterson's original signature. Partly in reliance on that guaranty, Bennett Street consummated the agreement to assign the lease to LaRocco. At the same closing, the lease was reassigned to Vita, LLC, a company formed by LaRocco and certain investors, and the lease was amended to fit the particulars of the arrangement between the landlord and the new tenant.

Patterson's loan to Vita, which actually came from a family trust, closed on January 4, 2008. LaRocco personally guaranteed the loan in favor of Patterson's family trust.

Vita defaulted on its obligations under the lease. Months after the transaction, Patterson and LaRocco met with Jack Brown, a representative of Bennett Street, in an attempt to "let him know the

---

("[T]he testimony of a party who offers himself as a witness in his own behalf at trial is to be construed most strongly against him when it is self-contradictory, vague or equivocal.").

[3] In fact, LaRocco suggested to Bennett Street that Patterson be the guarantor. And William Duncan, an attorney for Bennett Street, drafted the guaranty. About a week before the closing, Duncan faxed all five pages of the document to LaRocco's attorney with an understanding that LaRocco's attorney or LaRocco would somehow see to it that Patterson signed it.

business couldn't support the rent that was in the lease"; in other words, to attempt to renegotiate the lease. Those talks failed, Patterson eventually failed or refused to respond to a demand to make good on the guaranty, and this suit followed.

On cross-motions for summary judgment, the trial court found as undisputed fact, among other things, that as of 2007, Bennett Street was the landlord and Atlanta's Best Dining Bennett, Inc. (ABDB) was the tenant of the relevant premises pursuant to the 1989 lease; that LaRocco asked his friend Patterson, an experienced businessman, who had already loaned $250,000 in connection with opening Vita, to sign the guaranty that had been prepared by Bennett Street; that Patterson signed it on December 24, 2007 without reading it or discussing it with anyone; that on December 27, the signed guaranty was brought to the closing and the transaction closed, which included an assignment of the lease to LaRocco and an amendment to that lease; that the lease was then assigned to Vita which later defaulted; and that Bennett Street made demand on Patterson under the guaranty, but Patterson refused to pay. Our review of the briefs and record shows that the facts found by the trial court as recited in this paragraph are not in dispute. The trial court concluded that Patterson's legal arguments were not persuasive, and, accordingly, it found as a matter of law that the guaranty is valid and binding on Patterson. It therefore granted summary judgment in favor of Bennett Street and denied Patterson's cross-motion. The court also made a ruling on damages that will be further discussed below.

1. Patterson contends the guaranty does not comply with the Statute of Frauds, which requires a promise to answer for the debt of another to be in writing and signed by the party to be bound. See OCGA § 13-5-30 (2). More specifically, he contends the guaranty does not satisfy the requirement that the writing must "identify the debt, the principal debtor, the promisor, and the promisee. [Cits.]" *John Deere Co. v. Haralson*, 278 Ga. 192, 193 (599 SE2d 164) (2004).

Here, the guaranty specifically identifies the debt as the obligations of the tenant under the January 20, 1989 lease for a portion of the building located at 2110 Peachtree Road, commencing on December 24, 2007 and terminating on December 31, 2010. The guaranty makes clear that the obligations of the tenant may be changed or altered without notice to the guarantor and assigned without effect on the guaranty. The guaranty specifies that ABDB has assigned to LaRocco its interest in the lease, which, when read with the remainder of the guaranty, can only be read to mean the interest of the tenant. Thus, based solely on the plain reading of the agreement, the guaranty identifies the debt as the obligations of the tenant under the specified 1989 lease, as assigned to LaRocco, for a three-

year period running from December 24, 2007 to December 31, 2010.

The assignment contemplated in the guaranty occurred on December 27, 2007, and it is documented by a written agreement of that date entitled "Assignment of Leasehold Estate Assumption Agreement and Bill of Sale" (the "2007 Assignment"). The 2007 Assignment explains that the landlord and LaRocco were agreeing to a "Fourth Amendment" to the lease and that "in the event of any conflict between the original lease and prior amendments, with the Fourth Amendment, that the Fourth Amendment shall control." The 2007 Assignment itemizes the amendments and modifications to the original lease.

Under the rules of construction applicable when addressing the Statute of Frauds, "a personal guaranty can be read in conjunction with another writing without violating the statute of frauds if (1) the guaranty refers to the other writing or (2) the two can be deemed contemporaneous writings under OCGA § 24-6-3 (a). [Cits.]" *LaFarge Bldg. Materials v. Pratt*, 307 Ga. App. 767, 770 (706 SE2d 131) (2011). Under the second prong, "as long as all the necessary terms are contained in signed contemporaneous writings, the statutory requirements and purpose of the Statute of Frauds have been met, whether or not the writings are cross-referenced." *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 460 (1) (314 SE2d 874) (1984).

Here, both the 2007 Assignment to LaRocco and the Fourth Amendment to the 1989 lease were signed on December 27, 2007, three days after Patterson signed the guaranty. The terms of the guaranty itself (without relying on parol evidence) show that an assignment of the 1989 lease from ABDB to LaRocco was contemplated as a part of the same transaction as the guaranty; indeed, the guaranty states that it was a "condition precedent to the Landlord's consent to the assignment. . . ." See *LaFarge*, 307 Ga. App. at 771 (2) (in order to construe contemporaneous writings together, they must be made in the course of the same transaction). And Patterson agreed to guarantee the tenant's obligations even if the lease were further amended or assigned. See generally *Brzowski v. Quantum Nat. Bank*, 311 Ga. App. 769, 771 (1), n. 7 (717 SE2d 290) (2011) (a person may guarantee present and future debts of the debtor); *Pendley v. Stewart*, 116 Ga. App. 327, 329-330 (3) (157 SE2d 511) (1967) ("one can execute a contract of guaranty making himself liable for future debts to be incurred by another"). Further, writings may be considered contemporaneous even when they are not executed on the same day as long as they are part of the same transaction. See *Dabbs v. Key Equip. Finance*, 303 Ga. App. 570, 574 (694 SE2d 161) (2010) (The word "contemporaneous" "does not connote perfect or absolute coincidence in point of time."). Finally,

even though the guaranty refers to the assignment as having already occurred, there is no question that the 2007 Assignment is the assignment to which the guaranty refers. See *Senske v. Harris Trust & Sav. Bank*, 233 Ga. App. 407, 410 (1) (504 SE2d 272) (1998) (where guaranty plainly shows to which document it refers, a minor error in a reference to the second document is not fatal). Accordingly, the guaranty and the 2007 Assignment, along with the Fourth Amendment,[4] can be read together to determine whether the guaranty complies with the Statute of Frauds.

When read together, these documents identify the principal debt as required by the Statute of Frauds. In addition, the guaranty sufficiently identifies the principal debtor as LaRocco, and it provides that Patterson consented to any subsequent assignment. Finally, the guaranty identifies Patterson as the promisor and Bennett Street as the promisee. We therefore conclude that the trial court did not err by holding that the Statute of Frauds does not bar Bennett Street's claim on the guaranty. "The statute of frauds is 'for the prevention of frauds and perjuries.' [Cit.]" *John Deere*, 278 Ga. at 194, n. 2. Under the facts of this case, the harm sought to be avoided by the Statute of Frauds does not exist.

The case of *Avec Corp. v. Schmidt*, 207 Ga. App. 374 (427 SE2d 850) (1993), is not controlling. In that case, the guaranty only referred to a lease dated February 10, but there was no lease with that date, and the guaranty and a lease of a different date were internally inconsistent. Unlike in *Avec*, in this case the guaranty shows on its face that the 2007 Assignment was a part of the same transaction. *Dabbs v. Key Equip. Finance* is also distinguishable on the facts. In that case, the guaranty referred only to an "agreement," yet there were three leases with the same date as the guaranty. Therefore, without parol evidence, it could not be shown which lease was a part of the same transaction as the guaranty. *Dabbs*, 303 Ga. App. at 575. See also *LaFarge*, 307 Ga. App. at 771-772 (2) (contemporaneous writing rule could not be employed because one document was unsigned).

2. Patterson contends the trial court erred by granting summary judgment against him on the guaranty because there is an issue of fact as to whether he signed the complete five-page guaranty that Bennett Street seeks to enforce or a version that was missing one page. But undisputed evidence shows that Bennett Street's attorney Duncan drafted the guaranty with five pages and faxed all five pages

---

[4] See OCGA § 24-6-3 (a) ("All contemporaneous writings shall be admissible to explain each other."); *Cox v. U. S. Markets*, 278 Ga. App. 287, 289 (628 SE2d 701) (2006) (Statute of Frauds satisfied "if the guaranty 'either in itself or in connection with other writings, identif(ies) the debt which is the subject of the promise. . . .' [Cit.]").

to LaRocco's attorney; that LaRocco gave the document to Patterson who signed it; that neither Patterson nor LaRocco claims that the document had four pages when Patterson signed it[5]; and that the signed guaranty was presented to Bennett Street at the December 27, 2007 closing with all five pages and Patterson's original signature. The fact that Bennett Street's file contains the signed but unstapled original with page 4 out of order and that the copy of the guaranty attached to the complaint omitted page 4 does not raise an issue of fact as to whether page 4 was present when Patterson signed it in December 2007. "[W]hile there may be some shadowy semblance of an issue, the case may nevertheless be decided as a matter of law where, as in this case, the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion." (Punctuation and footnote omitted.) *Heretyk v. P. M. A. Cemeteries*, 272 Ga. App. 79 (1) (611 SE2d 744) (2005).

3. Patterson also contends the guaranty cannot be enforced because it was altered after he signed it, thereby voiding the agreement. The undisputed evidence shows that at the closing on December 27, 2007, Duncan added handwritten language to Paragraph 1, and LaRocco's attorney initialed the change "CP," meaning Patterson, who was not present. Paragraph 1 contains the main guaranty, which provides that Patterson guarantees the obligations of the tenant under the lease. Paragraph 12 of the guaranty only states the term of the agreement: "This Guaranty and the obligations of the Guarantor shall apply to all obligations of Assignee as the tenant under the Lease commencing on the date hereof and terminating on December 31, 2010." At the end of Paragraph 1, LaRocco's attorney simply added the following: "subject to the limitation in Paragraph 12."

Patterson's claim fails because he has not shown that the change materially altered the agreement.

> If a written contract is altered intentionally and in a material part thereof by a person claiming a benefit under it with intent to defraud the other party, the alteration voids the whole contract, at the option of the other party. If the alteration is unintentional or by mistake or in an immaterial matter or not with intent to defraud and if the contract

---

[5] LaRocco deposed that the guaranty only had four pages when he saw it prior to the closing. But he clarified his answer to say that he saw a document with four pages only after, or perhaps at, the closing when the other documents were signed, which would be December 27, 2007. He testified that he was not otherwise "involved" with the guaranty; and that he first noticed that he had a signed copy with four pages in his file about a month before his deposition.

as originally executed can be discovered and is still capable of execution, it shall be enforced by the court. If the alteration is made by a stranger and not at the instance or by collusion of a party or privy and if the original words can be restored, the contract shall be enforced.

OCGA § 13-4-1. Here, the guaranty was already limited by the term specified in Paragraph 12. Accordingly, the meaning of the guaranty was not changed by the handwritten entry, and therefore the agreement is not void. See, e.g., *Price v. Mitchell*, 154 Ga. App. 523, 526 (2) (268 SE2d 743) (1980) (alteration that neither adds nor takes away from the agreement "is merely 'surplusage' and not 'material' " and cannot therefore create an issue for the jury).

4. Finally, Patterson contends the trial court erred with regard to damages. Patterson's two arguments are that the trial court erred by admitting an alleged business record as an exception to the hearsay rule and that the document is incomplete on its face and therefore inadequate to establish the relevant debt. A trial court's decision to admit evidence as an exception to the hearsay rule will not be disturbed absent an abuse of discretion. *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (2) (501 SE2d 30) (1998).

With its motion for summary judgment, Bennett Street submitted two affidavits of its managing partner Jack Brown. In those affidavits, Brown averred that he was personally familiar with the books and records of Bennett Street and its method of keeping records; that it was and is the regular course of business for Bennett Street "to make a memorandum or record of [the relevant] acts, events, transactions and occurrences at the time of their occurrence, or within a reasonable time thereafter"; and that he knew that the attached, one-page "Customer Balance Detail" was made in the regular course of Bennett Street's business. He did not aver that the document was computer generated or state when it was made. The undated document has Bennett Street's name at the top; it indicates that it pertains to Vita, LLC; it purports to list "all transactions"; it shows invoices and payments from July 31, 2009 through April 6, 2010, and it reflects a total balance of $197,221.76.[6]

The type of writing admissible as a hearsay exception under the

---

[6] In response, Patterson submitted an affidavit by LaRocco, who averred simply that, based on his review of Vita's records, "[t]he Bennett Total is not correct." The only supporting detail that he provided was that the total failed to take into account a payment of $49,500 that Vita made to Bennett Street

as prepaid rent, rent abatement and rent reduction Bennett St. provided to Vita and [his subsequent restaurant on the premises] before April 6, 2010, credit due to Vita for referring a tenant to Bennett St., credit due from Bennett St. for an insurance reimbursement, and credit due for some furniture sold to Bennett St.

business records exception is "[a]ny writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event. . . ." OCGA § 24-3-14. The record submitted by Bennett Street is not such a record; it is a summary of such records. It was not made at the time of those transactions; it was clearly printed sometime after April 6, 2010, yet it purportedly represents the amount owed on a lease whose term commenced on January 1, 2008.

In order for summaries to be admitted, the underlying records must be available to the court and the parties:

> [A]lthough a summary prepared in support of a demand for payment may not qualify as a business record under OCGA § 24-3-14, [cit.], summarized statements of what records show are admissible if the records themselves are accessible to the court and the parties. [Cit.]

*Morris v. Nat. Western Life Ins. Co.*, 208 Ga. App. 443, 444 (1) (c) (430 SE2d 813) (1993). See, e.g., *Walter R. Thomas Assocs. v. Media Dynamite*, 284 Ga. App. 413, 417 (1) (b) (643 SE2d 883) (2007) (summary of invoices admissible given that invoices themselves were admitted). Compare *E. H. Crump Co. of Ga. v. Millar*, 200 Ga. App. 598, 600 (3) (409 SE2d 235) (1991) (summary of commissions under an employment agreement created for use in litigation was not made in the regular course of business and was not admissible as evidence on summary judgment); *Wickes Lumber v. Energy Efficient Homes*, 157 Ga. App. 303 (277 SE2d 298) (1981) (monthly account statement was itself an admissible business record). Our search of the record reveals no underlying business records were available to the court or Patterson.

We accordingly find that the trial court abused its discretion by considering the one-page summary of the amount owed under the lease in determining the damages to be awarded. In sum, we affirm the judgment as to liability but reverse the award of damages and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded. Barnes, P. J., concurs. Blackwell, J., concurs in Divisions 1, 2 and 3, and in the judgment.*

---

The trial court held that LaRocco's affidavit failed to raise an issue of material fact as to the principal indebtedness with the exception of the asserted $49,500 credit. It therefore granted summary judgment in the amount of $147,721.76, because that amount was undisputed but denied summary judgment regarding the asserted credit.

DECIDED MARCH 19, 2012.

*Kitchens, Kelley & Gaynes, Mitchell S. Rosen*, for appellant.
*Johnson & Ward, Stanley E. Kreimer, Jr.*, for appellee.