A92A1039. TOKHEIM CORPORATION et al. v. FIRST AMERICAN BANK OF GEORGIA, N.A.
(424 SE2d 54)

JOHNSON, Judge.

Tokheim Corporation and its subsidiary, Sunbelt Hose & Petroleum Equipment, Inc., brought a three-count complaint against First American Bank asserting breach of an indemnification agreement, breach of contract and fraud. First American moved for summary judgment on all three counts. Tokheim moved for summary judgment in its favor on the breach of indemnification claim. The trial court granted summary judgment in favor of First American on all counts

and this appeal follows.

1. Tokheim argues that the trial court erred in entering summary judgment in favor of the bank on its breach of indemnification claim. In reviewing the record in this case, with all inferences in favor of the plaintiffs/appellants, *Eiberger v. West*, 247 Ga. 767, 769 (1) (281 SE2d 148) (1981), the evidence is as follows. Tokheim Corporation is a manufacturer of petroleum and gas dispensing equipment which sold its products from 1970 through 1986 in Georgia and Florida through a distributor, Equipment Sales Company, Inc. (Sales). Sales became seriously delinquent on its open account with Tokheim, as well as on a line of credit account extended by First American Bank of Georgia. As security for the line of credit, First American held a perfected first priority security interest in Sales' inventory. Tokheim and First American discussed forcing Sales into involuntary bankruptcy, but a deal was ultimately structured in which Sunbelt, a subsidiary of Tokheim, would purchase Sales' assets. First American agreed to release its security interest in the inventory in exchange for paying down $740,000 of Sales' debt. In conjunction with closing of the transaction on August 8, 1986, Sunbelt (Tokheim) deposited $740,000 into Sales' account, which Sales directed the bank to apply to its debt. At closing, First American delivered a document captioned "Certificate and Agreement of National Bank of Georgia" (the indemnification) to Sunbelt (Tokheim). Section I of the Certificate stated that First American had a first priority security interest in Sales' assets and stated that "no other person or entity has a right, claim or lien that is superior to [First American's] to receive the $740,000 in proceeds from such sale and conveyance." In Section II, First American agreed to indemnify Tokheim (and Sunbelt) "against any and all expenses, costs, payments, damages, losses and liabilities, including attorney fees resulting from the successful assertion by any person, persons, corporation, (etc.) that . . . they had an interest in the Proceeds that was superior to that of [First American]. . . ."

Prior to the closing, both the Internal Revenue Service and the Georgia Department of Revenue had notified the parties that delinquent taxes were outstanding. The IRS' lien was discharged at closing. First American agreed to lend Sales an additional $41,916 to pay the Georgia Department of Revenue in order to make the transaction close. In conjunction with the closing, Sunbelt signed an acknowledgment stating that they understood that the amounts claimed by the Georgia Department of Revenue were "[f]or such taxes against assets conveyed by Sales to Sunbelt (and) will not give rise to a claim for indemnification by Sunbelt against First American under the terms of the documents executed today."

Sunbelt received notices of past due tax assessments from the Georgia Department of Revenue throughout 1987 and 1988, eventu-

ally totalling $193,000. Sunbelt negotiated a settlement reducing the tax due to $129,000. Sunbelt brought this action against First American seeking to recover that amount pursuant to the indemnification provisions contained in the "Certificate" referred to above.

First American argued in its motion for summary judgment, that taxes were *specifically* contemplated and excluded from the indemnification agreement executed at closing. The trial court granted First American's motion for summary judgment. We agree.

" '(T)he scope of . . . indemnity provisions . . . , manifested in the form of written contracts, is a question of law for the court.' [Cit.]" *Westinghouse Elec. Corp. v. Williams*, 183 Ga. App. 845, 846 (2) (360 SE2d 411) (1987). The indemnification given by First American would only be triggered in the event a successful claim was made against the proceeds of the $740,000 paid by Sales to First American. The Georgia Department of Revenue did not make a claim on those proceeds. Rather, it sought to collect from the funds paid from Sunbelt (Tokheim) to Sales pursuant to OCGA § 48-7-108 or OCGA § 48-8-46. A claim on the funds paid by Sunbelt (Tokheim) to Sales, the first stage of the two part transaction, was not contemplated by the language of the indemnification. It is not necessary to consider the acknowledgment, as the language of the indemnification alone adequately delineates the scope of the contract. We find that the indemnification did not extend to the Georgia Department of Revenue's claim against Sunbelt (Tokheim). Therefore, the trial court did not err in entering summary judgment in favor of First American on Count 1.

2. The contract at issue in Count 2 of the complaint authorized ESCIA, Sunbelt's predecessor, to collect Sales' outstanding accounts on behalf of the bank and retain two percent of monies collected as commission. The bank, in support of its motion for summary judgment on this claim, submitted the affidavit of Michael Lane stating that the contract was terminated by mutual consent with the approval of ESCIA's president. The record contains evidence which corroborates this by showing conduct of the parties subsequent to the mutual termination which is consistent with the facts asserted in the affidavit. The employee responsible for collection of the accounts left ESCIA and was hired by the bank to continue the same collection effort for the bank in-house. The affidavit of ESCIA's (Sunbelt's) general counsel that he was unaware of the president's actions is insufficient to create a genuine issue of material fact as to whether the contract was terminated by mutual consent of the parties. Despite all of the discovery conducted in the case, appellants have not provided evidence of any amounts collected upon which the commission was not paid. Therefore it is clear that summary judgment as to the breach of contract claim was proper.

3. In light of the rulings on Counts 1 and 2, recovery on a fraud claim would be precluded, and therefore the court did not err in granting summary judgment on Count 3 relating to fraud.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Applying this standard to the facts of this case, First American was entitled to summary judgment on all three counts of the complaint as a matter of law, and the trial court did not err in so ruling.

*Judgment affirmed. Carley, P. J., and Pope, J., concur.*

DECIDED OCTOBER 9, 1992 —
RECONSIDERATION DENIED NOVEMBER 2, 1992 

*Swift, Currie, McGee & Hiers, Jane C. Barwick*, for appellants.
*Sutherland, Asbill & Brennan, Thomas M. Byrne*, for appellee.