## A01A0808. GEORGE L. SMITH II GEORGIA WORLD CONGRESS CENTER AUTHORITY v. SOFT COMDEX, INC.
### (550 SE2d 704)

ELLINGTON, Judge.

The George L. Smith II Georgia World Congress Center Authority ("Authority") appeals from the grant of summary judgment to Soft Comdex, Inc., formerly known as Interface Group, Inc. ("Comdex"), on its indemnification cross-claim in a personal injury action. The plaintiff in the underlying case, Ernest Acord, was injured when he walked through a parking lot on his way to a Comdex convention in the Georgia World Congress Center ("Center") and was hit on the

head by a mechanical "parking arm." Acord sued both the Authority and Comdex for his injuries. The Authority answered and filed a cross-claim for indemnification against Comdex. Comdex settled with Acord before trial, and a jury subsequently returned a defense verdict for the Authority. When Acord challenged the verdict, however, the Authority settled with Acord for $25,000.

The Authority's cross-claim seeks indemnification from Comdex for settlement costs, litigation expenses, and attorney fees. Comdex filed a motion for summary judgment on the cross-claim, arguing that it was not liable for indemnification under the parties' licensing contract because Acord's injuries occurred in a Georgia Dome parking lot, not on the licensed premises, and occurred before Acord was admitted to the Center. The Authority filed a cross-motion for summary judgment. After conducting a hearing, the trial court granted summary judgment to Comdex on the indemnification cross-claim. Because we find that the application of the parties' contract to the undisputed facts demonstrated that Comdex was not liable for indemnification as a matter of law, we affirm the trial court's order.

> Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The construction of a contract is peculiarly well suited for disposition by summary judgment because, in the absence of an ambiguity in terms, it is a question of law for the court. An ambiguity exists only if after the application of the pertinent rules of interpretation, it remains uncertain which of two or more possible meanings the parties intended. No construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation.

(Citation, punctuation and footnotes omitted.) *Tucker Materials v. Devito Contracting &c.*, 245 Ga. App. 309, 310 (535 SE2d 858) (2000). See also OCGA §§ 13-2-1; 13-2-2 (statutory rules of construction). Further, the scope of a written indemnification contract is a question of law for the court, which must strictly construe the contract against the indemnitee, in this case the Authority. *Park Pride of Atlanta v. City of Atlanta*, 246 Ga. App. 689, 691 (1) (541 SE2d 687) (2000); *Tokheim Corp. v. First American Bank &c.*, 206 Ga. App. 105, 107 (1) (424 SE2d 54) (1992). On appeal from the grant of summary judgment, this Court reviews the record de novo. *Sagon Motorhomes v. Southtrust Bank of Ga.*, 225 Ga. App. 348, 349 (484 SE2d 21) (1997).

Viewed in light of these precepts, the record shows that Comdex entered into a licensing contract with the Authority to use the Center for a computer show from April 19, 1995, through April 30, 1995. The contract was drafted by the Authority and stated in part as follows: "[The] Authority hereby grants to [Comdex] . . . a license for access to the common areas of the [Center] made available to [Comdex] and for use of the facilities in the Center which are described in Paragraph A.3 (hereinafter 'facilities')." The contract defined "Center" as "the property operated *as* the Georgia World Congress Center and includes the facilities listed in Paragraph A.3." (Emphasis supplied.) Paragraph A.3 listed the following areas: eight exhibit halls, a registration hall, an auditorium, a ballroom, and several rooms in the conference center. "Common areas of the Center" included the "exterior, the entrance concourse, meeting room and exhibit hall concourses, loading docks, and marshalling [sic] facilities." Further, the contract stated that

> [Comdex] waives, releases, and agrees to indemnify and save the State of Georgia and Authority and its officers and employees harmless from all liabilities, and the cost and expenses of defending all claims of liability, for any personal or bodily injury to persons, including death, arising out of the use of the Center by [Comdex] or by any other person admitted to the Center by [Comdex] (i) suffered by [Comdex], (ii) *suffered by any person admitted to the Center by [Comdex]*, or (iii) suffered by other any [sic] person as a result of the acts or omissions of [Comdex] or any persons admitted to the Center by [Comdex] . . . , regardless of whether Authority's negligent or wrongful act or omission caused, contributed to or aggravated such injury.

(Emphasis supplied.)

1. The Authority contends the trial court erred in granting summary judgment to Comdex, asserting Comdex is liable for indemnification under the contract because Acord had been "admitted to the Center" at the time of the injury. Under the contract, Comdex was liable only for injuries to persons "admitted to the Center," unless they are injured by Comdex's own negligence.[1] The contract specifically defined the term "Center" as "property operated as the Georgia World Congress Center." Comdex argues that Acord was injured on property owned by the Authority but *operated* as part of the Georgia Dome, not the Center.

On appeal, the Authority relies on OCGA § 10-9-3 (3) to blur the

---

[1] There was no evidence of negligence on the part of Comdex.

distinction between the Authority, the Center, and the Georgia Dome. That statute is part of the George L. Smith II Georgia World Congress Center Act, OCGA § 10-9-1 et seq., which established the Authority and its oversight of a State-owned international trade and convention center project. OCGA § 10-9-3 (3) defines the "project" to include the Center, but provides that other facilities within the project may be "otherwise designated" by the Authority. According to the Authority's bylaws, the Authority oversees the management and operation of the Center, the Georgia Dome, and Centennial Olympic Park, but each facility has a separate general manager and budget.

(a) The record shows that, while the Authority oversees the management of the parking lot where Acord was injured, commonly referred to as the Georgia Dome "Gold Lot," the parking lot was constructed as part of the Georgia Dome project. Income from the Gold parking lot is dedicated to the Georgia Dome.[2] There is no direct access for visitors walking from the Gold parking lot to the Center. Visitors who enter the parking lots must pay a fee separate from the admission charged by events in the surrounding facilities. Therefore, as the record shows the Georgia Dome and the Center are operated separately and the Gold parking lot is part of the Georgia Dome project, the parking lot is not part of the "Center" as defined in the contract.

(b) Further, under the maxim "expressio unius est exclusio alterius,"[3] the list of "Facilities Licensed" in the contract is presumed to exclude any facility not specifically listed. The contract did not include "parking lots" among its list of "Facilities Licensed." Strictly construing the contract against the Authority as indemnitee, therefore, requires excluding the parking lots from coverage under the contract.

(c) Although the Authority also argues that the contract refers to the "exterior" as being part of the "Common areas" of the Center, we find no basis for extending the contract term "exterior" beyond the adjacent plazas to include all nearby parking lots operated by the Authority. See OCGA § 13-2-2 (2) (in construing a contract, the court should generally assign words their usual and common meanings).

Accordingly, at the time Acord was injured in the Georgia Dome Gold parking lot, he was not yet admitted to property "operated as the . . . Center" or otherwise covered by the contract. Therefore, the trial court did not err in granting summary judgment to Comdex on

[2] The record also shows that no Comdex employees were involved in the direction of traffic or collection of parking fees, and Comdex received no income from parking revenues during the April 1995 computer show.

[3] "[T]he express mention of one thing implies the exclusion of another. [Cit.]" *Walton v. Prudential Ins. Co.*, 210 Ga. App. 82, 83 (435 SE2d 289) (1993).

the Authority's indemnification cross-claim.

2. Our decision in Division 1, supra, renders the remaining enumeration moot.

*Judgment affirmed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED JUNE 19, 2001 —
RECONSIDERATION DENIED JULY 9, 2001.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Owen, Gleaton, Egan, Jones & Sweeney, Timothy J. Sweeney,* for appellant.

*Wilson, Strickland & Benson, Mary M. Brockington, Holland & Knight, Fred R. Slotkin, Jr., Mabry & McClelland, Edwin L. Hamilton, John G. Godsey,* for appellee.