A10A1573. NEWTON'S CREST HOMEOWNERS' ASSOCIATION
v. CAMP et al.
A10A1867. KENNEDY DEVELOPMENT COMPANY, INC.
v. CAMP et al.
(702 SE2d 41)

ELLINGTON, Judge.

Donald Camp, Brenda Camp and Donnie Camp (collectively, "the Camps") sued Kennedy Development Company, Inc. ("Kennedy") for

negligence, nuisance and continuing trespass, alleging that Kennedy's development of a subdivision on nearby property and its alteration of an existing detention pond caused stormwater runoff to flood and damage their property. Kennedy, in turn, filed a third-party complaint against the Newton's Crest Homeowners' Association, Inc. ("NCHA"), contending that, pursuant to a contract between the parties, the NCHA agreed to defend and indemnify Kennedy for any claims, actions or damages related to the construction, maintenance, repair or operation of the subdivision or the detention pond. The NCHA moved for summary judgment on Kennedy's third-party complaint and, in Case No. A10A1573, appeals the denial of its motion.[1] In Case No. A10A1867, Kennedy filed a cross-appeal from the trial court's denial of its motion for summary judgment on the Camps' complaint.[2] For the following reasons, we affirm the denial of summary judgment to Kennedy in Case No. A10A1867, and reverse the denial of summary judgment to the NCHA in Case No. A10A1573.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006). So viewed, the record shows the following facts.

In 1967, Donald and Brenda Camp purchased about six acres of rural property in Gwinnett County. They purchased another six acres of adjacent property in the 1990s. Throughout this time, a natural creek ran through the Camps' property. On the north side of the Camps' property is the Hunter's Pond subdivision, which was developed in the 1970s around a lake that is now called "Hunter's Pond." Historically, excess stormwater from the pond drained into the creek on the Camps' property.

Tycor, Inc. owned approximately 47 acres of undeveloped property northwest of (and uphill from) the Hunter's Pond subdivision,

---

[1] This Court granted the NCHA's application for interlocutory appeal. See OCGA § 5-6-34 (b) (interlocutory appeal procedure).

[2] See OCGA § 5-6-38 (a) (allowing cross-appeals in civil cases).

and the corporation planned to develop a new subdivision on the land. Pursuant to a February 2001 agreement between Tycor and the Hunter's Pond subdivision ("the detention facility agreement"), the new subdivision was going to be allowed to use Hunter's Pond as its detention pond. Under the detention facility agreement, Tycor agreed to repair the pond's "dam and outlet structure," to drain the pond and lower its floor, to maintain the pond in good working order, and to remove and dispose of "all future accumulated post-development sediments."

Before beginning to clear or to develop the new subdivision property, however, Tycor sold the property to Kennedy in April 2001, and the corporation assigned its rights and responsibilities under the detention facility agreement to Kennedy. Kennedy immediately began developing the new subdivision community of approximately 185 homes, Newton's Crest, by, inter alia, clear-cutting the land, grading, installing utility lines, and putting in streets. In addition, Kennedy made Hunter's Pond deeper and put in a concrete spillway.

According to Donald Camp, in 2001, when Kennedy began clearing the land for the Newton's Crest subdivision, the amount and velocity of stormwater, silt and mud running onto his property and into his creek from Hunter's Pond each time it rained increased significantly, causing substantial erosion, tree loss, and other damage to his property and reducing its value.[3] During his deposition, Camp repeatedly emphasized that he had lived on his property for over 30 years and that he "never had any problems" with excess stormwater running onto his property from land development in the area until Kennedy cleared the Newton's Crest property and began development of the subdivision. Brenda Camp also deposed that the problems with excess stormwater, silt and mud running onto and damaging her property began when Kennedy started developing the Newton's Crest subdivision and that the amount of erosion and other damage is getting progressively worse.

After attempting to repair some of the damage to his property himself, Donald Camp complained to officials of the City of Snellville about the stormwater runoff problem. A Kennedy employee, James Kennedy, admitted that he had talked to city officials, who had notified him of complaints from nearby property owners about the increase in stormwater runoff from the pond. Beginning in 2002, the city repeatedly ordered Kennedy to remove silt from the pond and a creek leading to the pond. It is undisputed that Kennedy received

---

[3] The Camps presented photographs of their property that showed what they alleged to be the widening of their creek due to erosion caused by the increase in runoff from Hunter's Pond.

numerous citations for noncompliance with erosion ordinances from the city, none of which Kennedy contested. In addition, James Kennedy admitted that he told Donald Camp that he was working with the city to resolve the runoff problem.

In 2003, based upon continued complaints from the Camps and other property owners, the city conducted a hydrology study in the area. After receiving the results of the study, the city ordered Kennedy to raise the pond's spillway six inches, and Kennedy complied. According to both Donald and Donnie Camp, though, after the modification to the spillway, the runoff problem became even worse, with a wider, more forceful flow of stormwater running off the spillway each time it rained.

In March 2006, the Camps filed the instant lawsuit against Kennedy and others, alleging that Kennedy was negligent when it developed the Newton's Crest subdivision and modified Hunter's Pond and that the increase in stormwater runoff resulting from Kennedy's actions constituted a nuisance and continual trespass onto their property. Kennedy, in turn, filed a third-party complaint against the NCHA, contending that, pursuant to an agreement between the parties, NCHA agreed to defend and indemnify Kennedy for any claims, actions or damages related to the construction, maintenance, repair or operation of the Newton's Crest subdivision or Hunter's Pond. The NCHA and Kennedy filed motions for summary judgment and, after conducting a hearing, the trial court denied the motions. These appeals followed.

## Case No. A10A1867

1. Kennedy contends that the trial court erred in denying its motion for summary judgment on the Camps' claim, arguing that the Camps failed to present any evidence that any act or omission on the part of Kennedy caused or contributed to their alleged damages. According to Kennedy, the Camps' allegations regarding the cause of the excess stormwater runoff and siltation are based upon nothing but their mere speculation and conjecture, are insufficient to eliminate other possible causes for the increased stormwater runoff, and are insufficient to contradict its expert's opinion that it was not responsible for any increase in the runoff. We disagree.

> Causation is an essential element of nuisance, trespass, and negligence claims. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not

that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.

(Punctuation and footnotes omitted.) *Lore v. Suwanee Creek Homeowners Assn.*, 305 Ga. App. 165, 172 (2) (699 SE2d 332) (2010). It is axiomatic, however, that "[i]ssues of proximate cause and contributory negligence are peculiarly questions for the jury, unless the evidence plainly and indisputably shows otherwise." (Citation omitted.) *Town of Register v. Fortner*, 274 Ga. App. 586, 588 (1) (618 SE2d 26) (2005).

In surface water runoff disputes where two lots adjoin, the lower lot owes a servitude to the higher, so far as to receive the water which naturally runs from it, *provided the owner of the latter has done no act to increase such flow by artificial means*. Thus, although property must accept the natural runoff of water from neighboring lands, an artificial increase or concentration of water discharge may give rise to a cause of action.

(Citations, punctuation and footnotes omitted; emphasis supplied.) *Green v. Eastland Homes*, 284 Ga. App. 643, 645 (1) (644 SE2d 479) (2007). Applying these principles to the instant case, the questions of whether Kennedy's acts or omissions artificially increased the amount or velocity of water discharged onto the Camps' property and whether such acts or omissions caused or contributed to the Camps' damages are ordinarily for the jury to decide; the trial court may only resolve these questions on a motion for summary judgment if the evidence is either plain and undisputed or based purely upon speculation or conjecture. *Lore v. Suwanee Creek Homeowners Assn.*, 305 Ga. App. at 172 (2); *Green v. Eastland Homes*, 284 Ga. App. at 648 (1); *Town of Register v. Fortner*, 274 Ga. App. at 588 (1).

As shown above, in this case, Donald Camp testified that he had never had any problems with excess stormwater runoff from Hunter's Pond until Kennedy began clearing the Newton's Crest subdivision property in 2001, that Kennedy's work on the subdivision property and on Hunter's Pond significantly increased the amount and velocity of stormwater, silt and mud running onto his property and into his creek each time it rained, that the excess runoff caused substantial erosion, tree loss, and other damage to his property, and that, after Kennedy modified the pond's spillway in 2003, the runoff problem

became even worse. This evidence was supported by Brenda and Donnie Camp's testimony. Contrary to Kennedy's argument, the Camps' testimony regarding their observations of the increased stormwater runoff onto their property following Kennedy's work on the subdivision property and the pond was not mere speculation or conjecture, but was competent and admissible evidence. See *DeKalb County v. McFarland*, 231 Ga. 649, 653 (2) (g) (203 SE2d 495) (1974) (concluding that the plaintiff's lay opinion that there had been a substantial increase in water flow onto his property was competent and admissible, noting that "[t]his witness had previously testified fully as to the flooding of his property and therefore was knowledge-able of the facts required for providing a correct answer. The question did not require expert testimony. Any lay witness, possessed of the facts, could answer it.").

In addition, the Camps showed that, during James Kennedy's deposition, he repeatedly acknowledged that his company's work on the subdivision, the pond and its spillway çaused more stormwater to run onto the Camps' property at the same time and at a higher velocity. He explained, however, that the changes to the pond and the spillway were necessary to protect some of the homes in the Newton's Crest subdivision from being flooded. Further, another Kennedy official, Clifford Kennedy, admitted that, after his company had done the initial work on the spillway and refilled the pond, the Camps and their neighbors complained that they were getting more stormwater runoff onto their property and that it was causing damage. He also acknowledged that, over time, he observed that the Camps' property was changing due to erosion. Finally, the Camps showed that James Kennedy had promised them that his company was working to resolve the runoff problem, that the City of Snellville had repeatedly cited Kennedy for its failure to comply with erosion ordinances, that the city had required Kennedy to remove excess silt from the pond and creek bed, and that, in 2003, the city had ordered Kennedy to raise the pond's spillway in an effort to reduce the amount and velocity of runoff onto adjoining property.

Although Kennedy presented an expert affidavit in which the expert opined that Kennedy's "development of Newton's Crest did not increase the peak rate of storm water discharge onto [the Camps'] property above and beyond the pre-development peak rate, nor did it artificially concentrate the storm water discharge [onto their] property," such evidence did not entitle Kennedy to summary judgment, but simply was additional evidence on the issue of causation for the jury to consider. "Opinion testimony can preclude (but not support) a grant of summary judgment." (Citation omitted.) *McGonagil v. Treadwell*, 216 Ga. App. 850, 853 (1) (456 SE2d 260) (1995). See also *Ponce de Leon Condos. v. DiGirolamo*, 238 Ga. 188,

191 (4) (232 SE2d 62) (1977) (Although the defendant presented an expert's opinion that the defendant's engineering design theoretically could not have caused an increase in the discharge of water onto the plaintiff's property, the jury was authorized to conclude otherwise from the plaintiff's nonexpert testimony and the photographic evidence presented.).

We conclude that the evidence presented, when viewed in favor of the Camps as nonmovants, was sufficient to create a jury question on the issue of causation. Thus, the trial court did not err in denying Kennedy's motion for summary judgment.

## Case No. A10A1573

Having determined that the question of Kennedy's liability for the Camps' damages pursuant to their complaint is for the jury to decide, we turn to the related appeal by the NCHA, which contends that the trial court erred in denying its motion for summary judgment on Kennedy's third-party complaint. In its third-party complaint, Kennedy alleges that it had entered into an "Assignment and Assumption Agreement" with the NCHA in which the NCHA promised to defend and indemnify it for any claims, actions or damages related to the construction, maintenance, repair or operation of the Newton's Crest subdivision or Hunter's Pond.[4]

2. On appeal, the NCHA argues that the indemnification provision of the Assignment and Assumption Agreement is void and unenforceable and, therefore, the trial court should have granted its motion for summary judgment. Specifically, the NCHA contends that the indemnification provision of the agreement is void under former OCGA § 13-8-2 (b), because it excuses Kennedy from liability for damages resulting from its sole negligence. For the following reasons, we agree.

"A contract is an agreement between two or more parties for the doing or not doing of some specified thing, OCGA § 13-1-1, and the party asserting the existence of a contract has the burden of proving its existence and its terms." (Citation and punctuation omitted.) *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 308 (2) (590 SE2d 260) (2003).

> The construction of a contract is peculiarly well suited for disposition by summary judgment because, in the absence

---

[4] In its third-party complaint, Kennedy does not allege (nor did it present any evidence in the trial court to show) that NCHA did anything to cause or contribute to the Camps' damages; instead, Kennedy's contentions regarding NCHA's potential liability to the Camps are based solely on the Assignment and Assumption Agreement between the parties.

of an ambiguity in terms, it is a question of law for the court. An ambiguity exists only if after the application of the pertinent rules of interpretation, it remains uncertain which of two or more possible meanings the parties intended. No construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation.

(Citations and punctuation omitted.) *George L. Smith Ga. World Congress Center Auth. v. Soft Comdex*, 250 Ga. App. 461, 462 (550 SE2d 704) (2001).

"As a general rule, a party may contract away liability to the other party for the consequences of his own negligence without contravening public policy, except when such an agreement is prohibited by statute." (Citation and punctuation omitted.) *Lanier at McEver v. Planners & Engineers Collaborative*, 284 Ga. 204, 205 (1) (663 SE2d 240) (2008). "[T]he scope of a written indemnification contract is a question of law for the court, which must strictly construe the contract against the indemnitee[.]" (Citations omitted.) *George L. Smith Ga. World Congress Center Auth. v. Soft Comdex*, 250 Ga. App. at 462.

*The undisputed facts that are relevant to the Assignment and Assumption Agreement.* In March 2006, the Camps filed their lawsuit against Kennedy, and Kennedy was properly served. At the time, Kennedy had not yet filed any Articles of Incorporation for the NCHA with the Georgia Secretary of State's office; it finally did so in May 2006, two months after the Camps filed their complaint.

In April 2007, Kennedy and the NCHA entered into an Assignment and Assumption Agreement, under which Kennedy conveyed to the NCHA all of its rights, duties, obligations and other responsibilities and interests under the subdivisions' declaration of covenants and the detention facility agreement. In exchange, the NCHA agreed to be solely responsible for the maintenance, repair and operation of the subdivision and to indemnify and defend Kennedy as to all claims or judgments which arose from Kennedy's development or repair of the property.[5] There is no evidence that Kennedy notified

---

[5] Specifically, the indemnification provision at issue states as follows:

4. *Indemnification.*

In material consideration of Kennedy's other obligations as set forth herein, the Association agrees to indemnify, defend and hold Kennedy harmless for and from any debts, claims, actions, damages, judgments or costs, including reasonable attorneys fees incurred in defending against any and all such debts, claims, actions, damages, judgments or costs incurred which arose prior to the date of this Agreement and are related to the construction, maintenance, repair or operation of

the NCHA of the Camps' pending lawsuit against it before the parties signed the Assignment and Assumption Agreement, even though such notice is expressly required by the agreement.

*The applicability of former OCGA § 13-8-2 (b) to the parties' April 23, 2007 contract.* Former OCGA § 13-8-2 (b)[6] provided as follows:

> A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, or his agents or employees, or indemnitee is against public policy and is void and unenforceable, provided that this subsection shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer.

"The purpose of [former] OCGA § 13-8-2 (b) [was] to prevent a building contractor, subcontractor, or owner from contracting away liability for accidents caused solely by his negligence, whether during the construction of the building or after the structure is completed and occupied." (Citation and punctuation omitted.) *Lanier at McEver v. Planners & Engineers Collaborative*, 284 Ga. at 206 (1). Thus, under former OCGA § 13-8-2 (b), an indemnification provision in an agreement is void if it meets two threshold conditions: (a) the agreement itself is related to "the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected

---

Newton's Crest Subdivision or are in any way related to the Declaration or the Detention Facility Agreements. The Association shall further indemnify, defend and hold Kennedy harmless for and from any debts, claims, actions, damages, judgments or costs, including reasonable attorneys fees incurred in defending against any and all such debts, claims, actions, damages, judgments or costs which arose or were incurred on or subsequent to the date of this Agreement. The Association agrees to sign any other papers that may be necessary to fulfill the intent of this agreement.

Kennedy shall send notice of any such claim to the Association within ten (10) days of the date Kennedy receives written notice of such claim. Any failure to send notice to the Association with[in] ten (10) days shall not relieve the Association of its duty to indemnify and defend Kennedy so long as the failure to provide timely notice does not unfairly prejudice the rights of the Association to defend against such claim.

[6] The statute was amended effective July 1, 2007. See Ga. L. 2007, p. 208, § 1.

therewith," and (b) the exculpatory provision purports to protect the indemnitee against the consequences of the indemnitee's sole negligence. *Smith v. Seaboard Coast Line R. Co.*, 639 F2d 1235, 1242 (5th Cir. 1981).

(a) *Is the Assignment and Assumption Agreement related to "the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith"?* Although Kennedy did not actually construct any buildings on the subdivision property, its work on the property consisted of, among other things, clear-cutting and grading the land, installing utility lines, and putting in streets. In addition, Kennedy drained and excavated the subdivision's detention pond to make it deeper and significantly altered the pond's spillway under the detention facility agreement. Moreover, as shown above, the plain language of the Assignment and Assumption Agreement requires the NCHA

> to indemnify, defend and hold Kennedy harmless for and from any debts, claims, actions, damages, judgments or costs . . . which arose prior to the date of this Agreement and *are related to the construction, maintenance, repair or operation of Newton's Crest Subdivision or are in any way related to the Declaration [of Covenants] or the Detention Facility Agreements.*

(Emphasis supplied.)

Applying former OCGA § 13-8-2 (b)'s reference to "the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith" liberally in this case, we conclude that Kennedy's work on the subdivision property and the detention pond and its spillway falls within the ambit of former OCGA § 13-8-2 (b). See *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc.*, 53 FSupp.2d 1361, 1370 (II) (A) (N.D. Ga. 1999) (construing former OCGA § 13-8-2 (b) liberally, the district court concluded, in dicta, that two large paper machines at a paper mill were either "appurtenances" or "appliances," so the former statute applied to a contract for the maintenance and repair of the machines).[7] It follows that, because the Assignment and Assumption Agreement in this case directly relates to such work by purportedly indemnifying Kennedy for any liability

---

[7] In reaching this conclusion, the district court observed that,
[a]lthough the Georgia courts have not defined precisely the terms "building structures, appurtenances, or appliances," the courts have applied the definition liberally. Indeed, the courts have not applied this section to construction contracts

arising from it, former OCGA § 13-8-2 (b) applies to the agreement.

(b) *Does the Assignment and Assumption Agreement purport to indemnify Kennedy against liability for damage caused by the indemnitee's sole negligence?* As shown above, under the agreement, the NCHA is required to indemnify Kennedy for any and all "debts, claims, actions, damages, judgments or costs" arising from or related to the construction, maintenance, repair or operation of the subdivision or the detention pond; the indemnification provision does not exempt claims arising from Kennedy's sole negligence. Thus, the indemnification provision improperly shifts all of Kennedy's liability to the NCHA, even for claims based solely upon Kennedy's actions or omissions.[8] Consequently, the indemnification provision of the Assignment and Assumption Agreement was void and unenforceable under former OCGA § 13-8-2 (b), and the trial court erred in denying the NCHA's motion for summary judgment on Kennedy's third-party complaint.

3. The NCHA also argues that the indemnification provision is unenforceable because it does not expressly state that it applies to Kennedy's sole negligence. In addition, it contends that it was prejudiced by Kennedy's failure to give it timely notice of the Camps' lawsuit, so Kennedy should be estopped from invoking the indemnification provision. Given our decision in Division 2, supra, these issues are moot.

*Judgment affirmed in Case No. A10A1867. Judgment reversed in Case No. A10A1573. Andrews, P. J., and Doyle, J., concur.*

DECIDED SEPTEMBER 24, 2010 — ▉▉▉▉▉

*Downey & Cleveland, Russell B. Davis, Joshua S. Ruplin*, for Newton's Crest Homeowners' Association.

---

only, but the courts have applied this section to both commercial and residential leases as well. Moreover, the Georgia courts have applied [OCGA §] 13-8-2 (b) to contracts for repair and maintenance within an existing commercial structure. (Citations omitted.) *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc.*, 53 FSupp.2d at 1370 (II) (A).

[8] See *Lanier at McEver v. Planners & Engineers Collaborative*, 284 Ga. at 206-207 (2) (An indemnification provision applied to "any and all claims" by third parties against the indemnitee and shifted all liability above the fee for services to the obligor, no matter the origin of the claim or who was at fault; thus, the provision was void under former OCGA § 13-8-2 (b).); *Nat. Candy Wholesalers v. Chipurnoi, Inc.*, 180 Ga. App. 664, 666-667 (350 SE2d 303) (1986) ("Though the words of the indemnification [provision] do not expressly refer to [appellant's] sole negligence, the logic is irrefutable that the agreement sought to indemnify [appellant] from any and all claims (which necessarily includes claims emanating from injuries caused solely by [appellant's] negligence)"; thus, the provision was void under former OCGA § 13-8-2 (b).); cf. *Precision Planning v. Richmark Communities*, 298 Ga. App. 78, 80-81 (2) (679 SE2d 43) (2009) (An indemnification provision between an architect and a developer specifically excluded from the developer's indemnity obligation any damages resulting from the architect's sole negligence; thus, the provision was not void under former OCGA § 13-8-2 (b).).

*Hicks, Casey & Foster, Richard C. Foster, Lisa K. Whitfield,* for Kennedy Development Company.

*Carlock, Copeland & Stair, David F. Root, Cheryl H. Shaw,* for Oak Ridge Homes, LLC.

*Bryan, Cave, Powell & Goldstein, Katherine V. Hernacki, C. Scott Greene, Curtis J. Romig, Matthew G. Watson,* for D.G. Jenkins Development Corporation.

*Larry E. Stewart, Gregg P. Counts,* for the Camps.