37846. PRIEST v. PEACE OFFICERS ANNUITY & BENEFIT FUND OF GEORGIA et al.

JORDAN, Chief Justice.

Priest's claim for disability benefits under the Peace Officers Annuity and Benefit Fund of Georgia (the Fund) was denied by the Fund's board of commissioners and by the superior court. He appeals. We affirm.

1. The first issue is whether Priest was a "peace officer" within the meaning of Code Ann. § 78-901. The term "peace officer" has been defined in that section to include *inter alia* "any . . . guard of . . . county public work camps . . . who is required by the terms of his

employment as such ... guard to give his full time to his job as such ... guard." In determining whether Priest was a "guard," we should construe the acts governing the Fund liberally in favor of Priest. *Purdie v. Jarrett,* 222 Ga. 795, 796-97 (152 SE2d 749) (1966), and cases cited therein.

Priest testified that his last employment with the camp was as a field mechanic or automotive mechanic. In the mornings, he checked out a work detail of county work camp inmates. During his working days, he supervised the work party of inmates while they serviced county trucks and other equipment. The inmates did the service work. He supervised or guarded them. He was responsible for getting them to lunch on time and for their care and control during the day until he returned them to the steward. Although bonded to carry a concealed weapon, he did not carry a firearm while on duty as field mechanic.

The work camp warden testified that the function of the field mechanic is to service equipment, not to guard prisoners. He reiterated that the field mechanic does not carry a firearm, and testified that in the event of an attempted escape the field mechanic should summon a correctional officer rather than personally attempting to confront the inmate.

We note that the General Assembly did not expressly limit the act's coverage to armed work camp guards. Hence, applying the rule of liberal construction in favor of the claimant, we conclude that county work camp guards may be "peace officers" within the meaning of the acts governing the Fund whether or not they carry weapons during working hours. *Purdie v. Jarrett,* supra. The Court of Appeals has reached the same conclusion. *Griffin v. Bass,* 96 Ga. App. 892, 895 (102 SE2d 64) (1958).

The word "guard" has not been defined for purposes of the acts governing the Fund, leading us to the conclusion that the General Assembly meant to include any person who is required by the terms of his employment to perform full time the function of a county work camp guard. Priest's custodial and supervisory duties over county work camp inmates fitted within the generic definition of the word "guard." Webster's New World Dictionary, Second College Edition. Accordingly, we hold that Priest's last employment with county work camp was as a "guard" within the meaning of Code Ann. § 78-901; hence, that he then was a "peace officer" within the meaning of the acts governing the Peace Officers Annuity and Benefit Fund.

2. Priest claims entitlement to disability payments under Code Ann. § 78-911, which removed the previous eligibility requirement that the cause of disability be job-related. The uncontested cause of Priest's disability was a heart attack that occurred at his home while

he was off duty. Also uncontested is the fact that Priest's heart attack and his disability occurred several months before the effective date of Code Ann. § 78-911.

We need not decide whether or not Priest is correct in his contention that by virtue of his being on a leave of absence he remained a "peace officer" within the purview of the acts governing the Fund until after the effective date of Code Ann. § 78-911. The critical fact is that even if he was a member on the effective date of that legislation his disability had occurred several months before the new law's effective date.

We find no indication that the General Assembly intended for all disabilities suffered by "peace officers" to be covered by the new eligibility requirements regardless of the date of their occurrence. To the contrary, the words used by the General Assembly to describe the time of the occurrence of disability covered by the new eligibility requirements are in the future tense, indicating that the General Assembly meant for the new disability provisions of Code Ann. § 78-911 to apply to disability occurring after that section's effective date.

In subsection (q) of Code Ann. § 78-911, the General Assembly expressly provided that the *amount* of the disability benefits provided in the new law shall apply to members of the Fund who had retired on disability prior to the new law's effective date, but this provision does not indicate an intention to change the *eligibility requirements* for disability benefits claimed for disabilities that occurred prior to the new law's effective date. *Lamneck v. Peace Officers Annuity & Benefit Fund,* 147 Ga. App. 346 (248 SE2d 710) (1978).

Although it is the general rule (See Division 1, supra) that pension laws must be liberally construed, we have declined in the past, and we decline again today, to revise or enlarge upon a pension fund's statutory provisions under the guise of construing the acts of the General Assembly establishing the fund. *Burks v. Board of Trustees,* 214 Ga. 251, 254-55 (104 SE2d 225) (1958). The trial court did not err by refusing to make the mandamus absolute.

3. All other enumerations of error are mooted by our ruling in Division 2, supra.

*Judgment affirmed. All the Justices concur, except Weltner, J., not participating.*

DECIDED NOVEMBER 12, 1981 —
REHEARINGS DENIED DECEMBER 1 AND DECEMBER 15, 1981.

*Bogart & Moss, Joel Y. Moss,* for appellant.

*Seay, Sims & Park, Clifford Seay, Hall & Hamling, Robert E. Hall,* for appellees.