42709. BARNETT et al. v. FULTON COUNTY et al.

(339 SE2d 236)

MARSHALL, Presiding Justice.

The appellants-plaintiffs were employees of the Fulton County Adult Probation Department prior to its takeover by the state in 1984. Pursuant to state statutory enactments, the employees of the Fulton County probation system have become employees of the state system. The appellants filed this petition for writ of mandamus against the appellees-defendants, who are members of the two pension plan boards for Fulton County employees. The appellants argue

that upon their termination of employment by the county, they were "retired by operation of law," thereby allowing them to collect pensions from the county. The trial court disagreed with the appellants' contention. Although we agree with the trial court in this regard, we find it necessary to vacate the judgment and remand for further consideration because of the trial court's failure to rule on certain issues presented.

Prior to July 1, 1984, all appellants were employees of the Fulton County Adult Probation Department with ten or more years of actual service. All appellants were participants in one of Fulton County's two employee pension plans. One of the plans is the Fulton County General Employees' Pension Fund, also known as the General Fund. The General Fund was created under Ga. L. 1939, p. 571 et seq. and under an amendment to the Act creating the General Fund, employees who are "retired by operation of law with ten or more years of actual service" are entitled to a "proportioned pension." Ga. L. 1963, pp. 2462-2463, § 1 (b). The other Fulton County employees' pension plan was created by the county in 1982 pursuant to its home rule authority, and it is the Fulton County Employees' Pension Fund, also known as the Home Rule Fund. Under the Home Rule Fund, individuals who are "retired by operation of law with ten or more years of actual service, with the exception of individuals whose employment is terminated for cause" are entitled to a "normal monthly pension benefit."

The background of this litigation concerns legislative changes in the responsibility for operation of the probation systems in DeKalb and Fulton Counties.

In 1913, a law was enacted authorizing grand juries to recommend establishment of probation officer positions in the various counties of this state. Ga. L. 1913, pp. 112-113, § 2. In 1956, the General Assembly enacted the "State-wide Probation Act." OCGA § 42-8-20 et seq. This Act created the framework for a statewide probation system under the Department of Corrections, the name of which was later changed to the Department of Offender Rehabilitation and has since been changed back to the Department of Corrections. OCGA § 42-8-20 et seq. By 1980, only Fulton and DeKalb Counties' probation systems continued to be operated outside of the statewide probation system.

In 1982, the General Assembly enacted an amendment to the State-wide Probation Act, which adopted a procedure for incorporating the probation systems of counties having a population of 400,000 or more into the state probation system. In this state, only Fulton and DeKalb Counties have populations of 400,000 or more. The 1982 Act (referred to by the appellants as the "takeover act") is codified at OCGA § 42-8-43.1 (a), (b), and (c). OCGA § 42-8-43.1 (c) provides:

"Each county probation system subject to the provisions of this Code section shall become a part of the state-wide probation system provided for by this article effective on July 1, 1984, and shall be fully funded from state funds as a part of the state-wide probation system beginning with fiscal year 1984-85. *The employees of said county probation systems, at their option, shall become employees of the department on the date said county systems become a part of the state-wide probation system and, on or after said date, said employees shall be subject to the salary schedules and other personnel policies of the department, except that the salaries of such employees shall not be reduced as a result of becoming employees of the department.*" (Emphasis supplied.)

In 1983, the General Assembly amended OCGA § 42-8-43.1 by adding subsection (d). OCGA § 42-8-43.1 (d) (referred to by the appellants as the "no-retirement amendment") is applicable to employees of a county probation system of a county having a population of 550,000 or more. Only Fulton County has a population of 550,000 or more in this state. The "no-retirement amendment" provides:

"*When an employee of a county probation system* of any county of this state having a population of 550,000 or more according to the United States decennial census of 1980 or any future such census *becomes an employee of the department pursuant to subsection (c) of this Code section at the same or a greater salary, the change in employment shall not constitute* involuntary separation from service or *termination of employment within the meaning of any local retirement or pension system of which the employee was a member at the time of such change in employment, and the change in employment shall not entitle the employee to begin receiving any retirement or pension benefit whatsoever under any such local retirement or pension system.*" (Emphasis supplied.)

In 1983, the General Assembly also enacted an amendment to the laws relating to the Employees' Retirement System of Georgia. Ga. L. 1983, p. 655, § 1. This amendment is codified at OCGA § 47-2-296. This amendment concerns employees of county probation systems who have become employees of the state as a result of the county probation system's becoming a part of the state-wide probation system. The amendment addresses the right of these employees to remain members of the local retirement systems and their right to become members of the Employees' Retirement System of Georgia. Under subsection (f) of § 47-2-296 (referred to by the appellants as the "only-one-option provision"), the employees of a county having a population of 550,000 or more "who were members of a local retirement system and who have ten or more years of creditable service under the local retirement system at the time the county probation system becomes a part of the state-wide probation system shall not

have the option to become members of the Employees' Retirement System of Georgia, and such employees shall continue active membership in the local retirement system." However, an employee of a county probation system who was a member of a local retirement system at the time the county probation system became a part of the state-wide probation system, and who was not subject to the limitation of subsection (f), was allowed under subsection (c) to "either continue active membership in the local retirement system . . . or become a member of the Employees' Retirement System of Georgia and transfer creditable service as an employee of the local retirement system to the Employees' Retirement System of Georgia . . . ," and employees covered by subsection (c) were given "the additional option to retire under the local retirement system, if qualified therefor, as provided in . . . subsection (e)."

The appellants state that upon becoming state employees, although they continued to receive the same or greater compensation than they received as county employees, they lost seniority, merit system job-loss protection, accrued vacation and sick-leave benefits, reduced job responsibilities and prestige in some instances, loss of dental-insurance benefits, and loss of employer contributions to life-insurance premiums.

Appellants applied to the pension plan of which each was a member to collect monthly pension benefits based on their retirement by operation of law as of July 1, 1984. All of the appellants but two exercised their option of becoming state employees. Two of the appellants chose to retire, but they are receiving significantly reduced pension benefits from those they would have received had they been classified as "retired by operation of law." The appellants' applications were denied.

Subsequently, the appellants filed this complaint, seeking a declaratory judgment that the mandatory termination of their employment with Fulton County constituted a "retirement by operation of law" within the meaning of their pension plans. They also sought a writ of mandamus compelling the boards of the two pension plans to authorize payment to them of the normal monthly pension benefits to which each of them is entitled.

The question of whether the July 1, 1984, change in employment provided by OCGA § 42-8-43.1 (c) constituted a "retirement by operation of law" within the meaning of appellants' respective county pension plans is, as found by the trial court, a question of first impression. The trial court answered this question in the negative, finding from the evidence presented that, "[t]he only change of substance brought about by the legislation complained of was the identity of plaintiffs' employer. Plaintiffs performed the same duties at the same or greater level of compensation for the State of Georgia instead of

Fulton County. Plaintiffs also retained membership in their respective pension plans and are presently entitled to the same pension benefits upon actual retirement as they were prior to July 1, 1984. Under these circumstances, a conclusion that plaintiffs have been 'retired by operation of law' is not warranted."

1. In this appeal, the appellants' primary argument is that due to the changes in their employment status resulting from the merger of the Fulton County probation system into the state system, they were, within the meaning of their respective pension plans, "retired by operation of law" from their Fulton County positions.

In advancing this argument, the appellants rely on "the rule . . . that pension Acts must be liberally construed in favor of the rights of the pensioner. *City of Macon v. Herrington,* 198 Ga. 576, 589 (32 SE2d 517)." *City Council of Augusta v. Wilhelm,* 111 Ga. App. 234, 236 (141 SE2d 220) (1965). Appellants also rely on the line of cases holding that, "a statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect; and . . . the impairment clause of our constitution [Art. I, Sec. I, Par. X of the Georgia Constitution of 1983] precludes the application of an amendatory statute or ordinance in the calculation of the employee's retirement benefits if the effect of the amendment is to reduce rather than increase the benefits payable . . . *Burks v. Board of Trustees of the Fireman's Pension Fund,* 214 Ga. 251 (104 SE2d 225) (1958); *Bender v. Anglin,* 207 Ga. 108 (60 SE2d 756) (1950), cert. denied 340 U. S. 878; *Trotzier v. McElroy,* 182 Ga. 719 (186 SE 817) (1936)." *Withers v. Register,* 246 Ga. 158, 159 (269 SE2d 431) (1980).

The determination of whether the appellants have been "retired by operation of law," within the meaning of the statutes and ordinances creating their respective pension plans, is ultimately a question for the judiciary. We do agree that, under the cases cited in *Withers v. Register,* supra, the General Assembly could not, by legislative fiat, decree that a given change in the appellants' employment did not constitute a retirement by operation of law under their pension plans. However, we do agree with the trial court that — since the General Assembly provided that, upon takeover of the county probation system by the state system, the employees of the county probation system, at their option, could become employees of the state system performing the same duties without a reduction in salary, and since it was further provided that they could continue participation in their county pension plans — the appellants were not "retired by operation of law" under their pension plans. The rule concerning liberal construction of pension Acts in favor of the pensioner should not be

taken so far as to allow the premature collection of pensions under the facts of this case.

2. In arguing that they have been retired by operation of law, the appellants point to a State Merit System ruling classifying employees of Fulton and DeKalb County probation departments in a "covered position" on July 1, 1984, as "interim appointees" who were not given "permanent status" until they had "served satisfactorily for six months."

Here, the appellants are not complaining of any permanent forfeiture of merit-system job-loss protection. They are only complaining of their temporary loss of such protection by reason of their classification as interim employees from July 1, 1984, until January 1, 1985. They do not argue that any of them failed to be given permanent status in a covered position. Under these circumstances, their temporary classification as interim appointees does not warrant the conclusion that they were retired by operation of law.

The appellants also point to an opinion of the Attorney General that the state is prohibited from crediting Fulton and DeKalb County probation department employees with annual and sick leave accrued by them while county employees, on grounds that this would violate the state constitutional provisions prohibiting the state from granting a donation or gratuity (Art. III, Sec. VI, Par. VI of the Georgia Constitution of 1983) and prohibiting the state from assumption of any county debt (Art. VII, Sec. IV, Par. X of the Georgia Constitution of 1983).

Assuming that this opinion is correct, the adverse consequences suffered by the appellants as a result of the loss of their annual and sick leave, as well as the other adverse consequences which they argue that they suffered as a result of their change in employment, are not so extreme as to warrant the conclusion that they were "retired by operation of law."

3. However, the appellants do raise two issues which the findings and conclusions of the trial court do not address.

First, the appellants argue that they have been denied equal protection of the law in that OCGA § 47-2-296 (c) gives employees of the DeKalb County probation system the option of becoming members of the Employees' Retirement System of Georgia, whereas OCGA § 47-2-296 (f) denies them this option. Second, the appellants argue that OCGA § 47-2-296 (f) is a local bill, the passage of which did not comply with the state constitutional requirement concerning the advertisement of notice of intention to introduce local bills. See Art. III, Sec. V, Par. IX of the Georgia Constitution of 1983; OCGA § 28-1-14.

Accordingly, the judgment is vacated and the case remanded for consideration by the trial court of these issues.

*Judgment vacated. All the Justices concur.*

DECIDED FEBRUARY 13, 1986.

*Lipshutz, Frankel, Greenblatt, King & Cohen, Theodore G. Frankel,* for appellants.

*John Tye Ferguson,* for appellees.